Gumaro Luis TAMEZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 51487.

Court of Criminal Appeals of Texas.

March 17, 1976.

Rehearing Denied April 14, 1976.

Ronald D. Zipp, Edinburg, for appellant.

Oscar B. McInnis, Dist. Atty., Edinburg, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from an order revoking probation which presents, among other

things, the question of the validity of a probationary condition which requires the probationer to submit his person, residence and vehicle to search by any peace officer at any time, night or day.

On October 24, 1973, in a bench trial, the appellant pled nolo contendere to the possession of marihuana. The imposition of the sentence was suspended and he was placed on probation for three (3) years subject to certain conditions, among which was the requirement that he "(a) Commit no offense against the laws of this State or any other State or of the United States."

In March, 1974, the State filed a motion to revoke. On April 11, 1974, the State filed an amended motion to revoke alleging in the first count thereof that on December 11, 1973, he "did receive and possess firearms, to wit: a pistol and a shotgun in violation of the Penal Laws of the United States and in violation of condition 'a' of the Judgment placing him on probation."

The second count alleged that on December 11, 1973, the appellant did intentionally and knowingly carry on and about his person a handgun in violation of the penal laws of Texas, and the third count alleged that on the same date he knowingly and intentionally possessed marihuana of more than four ounces.

On April 17, 1974, the court conducted a hearing on the amended revocation motion and at the conclusion of the hearing revoked upon the first count of the revocation motion alone.

The appellant appealed contending the court abused its discretion in revoking probation.

Gary Wheeler, United States Border Patrol Agent, testified at the revocation hearing he was conducting a stationary checkpoint on State Farm to Market Road 1017, approximately seven miles north of La Gloria, Texas, and 25 or 30 miles from the Mexican border on December 12, 1973,[1] when he encountered the appellant. He described the checkpoint as a permanent checkpoint to check traffic and question people about citizenship, although there were no permanent facilities there. He related that nearly every day some unit of the border patrol was there. On the day in question he related he stopped one Ramon Dionicio Martinez driving a pickup truck and discovered over 300 pounds of marihuana in a large metal compartment in the bed of the pickup.

Two or three minutes later Wheeler related a white over blue Cadillac approached the checkpoint. The driver was the appellant Tamez, and he was with Juan Guerra and another man.

Wheeler stated he had never seen the appellant before and did not know he was on probation and had no reason to believe the car had crossed the international boundary. The occupants stated that they were from the Donna-Weslaco area. A search of the Cadillac revealed a .25 caliber pistol under the driver's seat, and a billfold belonging to Martinez, driver of the pickup, was found on the floorboard of the car in the back.

Testimony as to the discovery of the pistol, etc., and the introduction of the same into evidence were over the objection that there was no probable cause for the search, no consent to search and the same was not justified as a border search. The State contended that it was in fact a border search, but relied heavily upon the condition of probation which was imposed on the appellant.

Kenneth Glick, a gun dealer in Pharr, testified that the pistol in question had been sold to a Casimiro Valdez Chapa on May 8, 1973, and he had originally obtained the pistol from the Firearms Import and Export Corporation of Miami, Florida, which had shipped the same through United Parcel Post on April 2, 1973.

Barry Jackson, Special Agent, Bureau of Alcohol, Tobacco and Firearms, testified as

---

1. All other evidence points to December 11, 1973, as the date in question.

to procedures used in tracing a firearm and related the pistol in question had been manufactured in Germany, shipped to the named import dealer in Florida and then to Glick's store in Pharr.

At the conclusion of the hearing the court revoked probation, finding that appellant violated his probationary conditions "in that on the 11th day of December, 1973, Defendant, Gumaro Luis Tamez, Jr., did have in his possession a firearm, to wit: a pistol, that had travelled in interstate commerce, in violation of the Penal Laws of the United States." Sentence was then imposed.

Initially appellant contends that the court erred in failing to grant his motion to quash the revocation motion for the allegations were vague and indefinite and did not specify as to what penal laws of the United States and State of Texas were violated and did not give him fair notice so that he could prepare a defense thereto.

As earlier noted, the allegation in the revocation motion upon which revocation was based merely alleged that appellant did receive and possess a pistol and shotgun in violation of the penal laws of the United States. No statutes were cited or mentioned nor were there allegations so the appellant could readily identify the offense allegedly committed. In the revocation order the court simply found that the appellant had possessed a pistol that had travelled in interstate commerce in violation of federal law. It may have been that the court meant to make reference to the Gun Control Act of 1968, 18 U.S.C., Sec. 922(h), making it unlawful for a convicted felon, inter alia, "to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." [2]

We agree that the allegations of count one of the revocation motion were couched in such general terms so as to give the appellant no notice of how he had violated his probationary condition. The allegations in a motion to revoke probation do not require the same particularity of an indictment or an information, but, in all fairness, the allegations as to a violation of probation should be fully and clearly set forth in the motion to revoke so that he might be informed as to that upon which he will be called to defend. *Campbell v. State,* 456 S.W.2d 918 (Tex.Cr.App.1970). When the motion fails to fully inform the probationer, he is denied the rudiments of due process. *Kuenstler v. State,* 486 S.W.2d 367, 368 (Tex.Cr.App.1972). Since the allegation in the motion upon which the revocation was predicated was in such general terms, not informing which federal gun law was supposedly violated, the revocation cannot stand. *Graham v. State,* 502 S.W.2d 809 (Tex.Cr.App.1973), and cases there cited.

Since in the event of another revocation hearing the other contentions raised are bound to reappear, we conclude we should also discuss them. Appellant contends the court abused its discretion in revoking probation since there was an illegal search and seizure in violation of the Fourth and Fourteenth Amendments, United States Constitution. See also Article I, Sec. 9, Texas Constitution.

First we must decide whether the fruits of the search were admissible as a border search,[3] and if not, then we must decide the validity of the probationary condition imposed.

In *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), the United States Supreme Court

---

**2.** In *Barrett v. United States,* —— U. S. ——, 96 S.Ct. 498, 46 L.Ed.2d 450, 18 Cr.L.R. 3033 (1976), the United States Supreme Court held that the above provision applied to a convicted felon's intrastate purchase from a retail dealer of a firearm that previously, but independently of the felon's receipt, had been transported in interstate commerce from the manufacturer to a distributor and then from the distributor to the dealer.

**3.** We note that the State makes no effort in its brief to rely upon the fact that the search was valid as a border search, but relies upon the probationary condition.

held that the Fourth Amendment prohibits the use of roving patrols to search vehicles, with neither a warrant nor probable cause, at points removed from the border and its functional equivalents. In *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975), the court held that *Almeida-Sanchez* was not to be applied retroactively, but would be applicable to a roving patrol search conducted after June 21, 1973, the date of the decision in *Almeida-Sanchez.* See also *Bowen v. United States,* 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975). In *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), the Court held that except at the border or its functional equivalents officers may stop vehicles only if they are aware of specific articulable facts, together with rational inferences therefrom, which would reasonably warrant suspicion that the vehicles are occupied by aliens who may be illegally in the United States; and that an officer whose observations lead him reasonably to suspect that a particular vehicle might contain illegal aliens is entitled to briefly stop the vehicles, question the occupants about their citizenship and immigration status and ask them to explain suspicious circumstances, but further detention or search must be based on consent or probable cause. In *Brignoni-Ponce* the Court held that the stop of a vehicle by a roving patrol was not legal where the vehicle's occupants' apparent Mexican ancestry furnished the only ground for suspicion that the occupants were aliens.

And in *United States v. Ortiz,* 422 U.S. 891, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975), the Court extended *Almeida-Sanchez* and held that at traffic checkpoints removed from the border and its functional equivalents officers may not search private vehicles without consent or probable cause.

On February 4, 1976, in *United States v. Martinez*[4] and *United States v. Peralez,* 526 F.2d 954 (5th Cir.1976), the Fifth Circuit Court of Appeals held that the Supreme Court's decisions in *Ortiz* and *Brignoni-Ponce* would be given retrospective effect. With regard to the *Martinez* case, the Court noted that the search was post-*Almeida-Sanchez* and pre-*Ortiz* and that while *Almeida-Sanchez* was not to be given retrospective application *Ortiz* did not establish a new rule in an overruling decision as had *Almeida-Sanchez,* and, in fact, the Court in *Ortiz* pointed out it was following *Almeida-Sanchez* and *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), in reaching its decision. The Fifth Circuit applied *Ortiz* to the *Martinez* case and reversed.

■ It is clear that the search in question on December 11, 1973, was post-*Almeida-Sanchez* and pre-*Ortiz,* and under the authorities cited the search could not be upheld as a border search. It is understandable why the State does not rely upon the validity of the search as a border search.

We now turn to the probationary condition which had been imposed upon appellant and which reads:

"h–1. Submit his person, place of residence and vehicle to search and seizure at any time of the day or night, with or without a search warrant, whenever requested to do so by the Probation Officer or any law enforcement officer."

Article 42.12, Sec. 3, Vernon's Ann.C.C.P., provides in part:

"The judges of the courts of the State of Texas having original jurisdiction of criminal actions, when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public as well as the defendant will be subserved thereby, shall have the power, after conviction . . . and may place the defendant on probation . . . ."

---

**4.** This case also involved a Ramon Dionico Martinez, which was the same name of the driver of the pickup truck in the instant case. The stop there was also at a traffic checkpoint near La Gloria, but the opinion states it was on October 11, 1973, while this record shows the stop in question was on December 11 or 12, 1973.

■ Probation in the instant case was granted under the provisions of the foregoing statute, and while the probationary condition set out above is not one of the suggested statutory conditions listed in Section 6 of the Act, the court is not limited to those statutory conditions where it grants probation.[5] *Peach v. State,* 498 S.W.2d 192 (Tex.Cr.App.1973).

■ Although the trial court has wide discretion in selecting terms and conditions of probation, *Salinas v. State,* 514 S.W.2d 754 (Tex.Cr.App.1974) (footnote # 1), it would appear, however, that the conditions imposed must be "reasonable" as expressly provided by statute. Article 42.12, Sec. 3d(a), Vernon's Ann.C.C.P. And in light of the provisions of the statute, it would appear that permissible conditions should "have a reasonable relationship to the treatment of the accused and the protection of the public." *Porth v. Templar,* 453 F.2d 330 (10th Cir.1971).

The imposition of a night curfew as a probationary condition was upheld as an appropriate condition under the circumstances in *Salinas v. State, supra.* And in *Reese v. State,* 167 Tex.Cr.R. 304, 320 S.W.2d 149 (1959), the requirement that the probationer enter a designated hospital for the treatment of narcotic addiction and remain there until medically discharged and then report to the probation officer was upheld.

However, in *Glenn v. State,* 168 Tex.Cr.R. 312, 327 S.W.2d 763 (1959), the court held that the condition " '. . . that any time the said defendant's conduct is not such that he warrants the confidence and esteem of the law abiding citizens of the State of Texas' . . .'" he shall forfeit his right to probation was an unreasonable condition and was too indefinite and uncertain to be the basis for revoking probation

for conduct which would warrant the confidence and esteem of some law-abiding citizens but might not merit that of others.[6] See and cf. *Whitt v. State,* 395 S.W.2d 39 (Tex.Cr.App.1965).

Our research has not revealed any case in this State like the instant one where the appellant was required to totally give up his federal and state constitutional rights against unreasonable searches and seizures as a condition of probation.

In *People v. Peterson,* 62 Mich.App. 258, 233 N.W.2d 250 (1975), the Court held that the blanket search and seizure provisions in the order of probation were invalid. The court wrote:

" . . . But when the waiver is conditioned on the surrender of so hallowed a right, the so-called choice amounts to no choice at all. We hold the probationer's signed acceptance thereof was in legal effect coerced and thus rendered nugatory."

In *United States ex rel. Coleman v. Smith,* 395 F.Supp. 1155 (W.D.N.Y.1975), the Court held that consent to search granted as a condition to parole was involuntary and that the parole officer's routine search of parolee's residence, without suspicion of parole violation, was unreasonable.

The Court held that to substantiate a proper consent to search the State must prove that consent was in fact freely and voluntarily given, citing *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968). And in determining whether the burden has been met, a court must examine the totality of the facts and circumstances surrounding the giving of consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

---

5. This authority is to be distinguished from the case where the jury recommends probation, in which situation the judge may impose only those conditions found in the statute. See Article 42.12, Sec. 3a, Vernon's Ann.C.C.P.

6. It is observed that in *Springer v. United States,* 148 F.2d 411, 416 (9th Cir.1945), the Court rejected the condition that the probationer donate a pint of blood to Red Cross Blood Bank.

The Court then quoted from *Schneckloth*, supra, at 412 U.S. at p. 228, 93 S.Ct. at 2048 as follows:

"But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion were applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed. . ."

The Court then held that the parolee's consent was coerced and not voluntary where the signature to consent form was necessary to obtain parole.

In *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir.1975), the Court held that the probationary conditions which would allow *any* law enforcement officer to search a probationer at *any* time were overbroad and violated the Federal Probation Act, 18 U.S.C., Sec. 3651. The Court held that such was not reasonably related to the purpose of the Act and also abridged the Fourth Amendment, that it was too broad, too sweeping and forced the probationer to relinquish too many valuable rights with too little gain to society. The Court stated that the conditions which can be reasonably said to be proper ones are those that contribute significantly both to the rehabilitation of the convicted person and to the protection of society.

■ Likewise, we conclude that the probationary condition in the instant case is too broad, too sweeping and infringes upon the probationer's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sec. 9, of the Texas Constitution. The condition imposed would literally permit searches, without probable cause or even suspicion, of the probationer's person, vehicle or home at any time, day or night, by any peace officer, which could not possibly serve the ends of probation. For example, an intimidating and harassing search to serve law enforce-ment ends totally unrelated to either his prior conviction or his rehabilitation is authorized by the probationary condition. A probationer, like a parolee, has the right to enjoy a significant degree of privacy. *United States v. Consuelo-Gonzalez*, supra; *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

■ It is clear that protection afforded by the Fourth Amendment and Article I, Sec. 9, Texas Constitution, extends to probationers. This court has consistently and knowingly made this clear in ruling on appeals from orders revoking probation. See, e.g., *Rushing v. State*, 500 S.W.2d 667 (Tex. Cr.App.1973); *Hegdal v. State*, 488 S.W.2d 782 (Tex.Cr.App.1972). See also *Martin v. United States*, 183 F.2d 436, 439 (4th Cir. 1950).

■ A diminution of Fourth Amendment protection and protection afforded by Article I, Sec. 9, Texas Constitution, can be justified only to the extent actually necessitated by the legitimate demands of the probation process. A probationer may be entitled to a diminished expectation of privacy because of the necessities of the correctional system, but his expectations may be diminished only to the extent necessary for his reformation and rehabilitation.

■ Further, it is clear that in accepting the condition of probation the appellant's "consent" was not in fact freely and voluntarily given. The choice to reject probation and go to prison or accept the probationary condition was really no choice at all. It was in legal effect coerced. *People v. Peterson*, supra.

We hold that the probationary condition imposed was not reasonable in light of the purposes of Article 42.12, supra, and that the court erred in using the condition as a basis for admitting fruits of a search which was otherwise illegal.

We concede there is ample authority to the contrary, but we cannot agree with those cases. The wording of the condition

in question seems to have been lifted verbatim from *People v. Mason*, 5 Cal.3d 759, 488 P.2d 630, 97 Cal.Rptr. 302 (1971), cert. denied, 405 U.S. 1016, 92 S.Ct. 1289, 31 L.Ed.2d 478. *Mason* held that a probationer who has been granted probation on the condition that he submit at any time to a warrantless search may have no reasonable expectation of the traditional Fourth Amendment protections.[7] Other cases to the same effect are *State v. Schlosser*, 202 N.W.2d 136 (N.D.1972); *State v. Mitchell*, 22 N.C.App. 663, 207 S.E.2d 263 (1974); *People v. Santos*, 31 A.D.2d 508, 298 N.Y. S.2d 526 (1969), cert. denied, 397 U.S 969, 90 S.Ct. 1010, 25 L.Ed.2d 263.

We hold that the pistol admitted into evidence in the instant case was the fruit of an illegal search and was improperly admitted, *Rushing v. State*, 500 S.W.2d 667 (Tex. Cr.App.1973), and the court abused its discretion in revoking probation on the ground that it did.

The judgment is reversed and the cause remanded.

DOUGLAS and ODOM, JJ., concur in that part of the opinion which states the search was unauthorized.

---

[7] There now exists a dispute about the exact scope of *Mason*. See *People v. Constancio*, 42 Cal.App.3d 533, 116 Cal.Rptr. 910 (1974); *People v. Bremmer*, 30 Cal.App.3d 1058, 106 Cal.Rptr. 797 (1973). Further, in *People v. Superior Court of San Mateo County*, 12 Cal.3d 858, 117 Cal.Rptr. 433, 528 P.2d 41 (1974), it was held that where the defendant was released from the Narcotic Addict Evaluation Authority under a condition that he submit to any search by any law enforcement officer "upon request," a subsequent search of his apartment in his absence without notice to him was invalidated for the words "upon request" meant notice to the defendant and was a prerequisite to the validity of the search.