Dana R. **SHOEMAKER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–97–185 CR.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 12, 1998.

Decided July 8, 1998.

Rehearing Overruled Aug. 26, 1998.

Lydia Clay-Jackson, Conroe, for appellant.

Michael McDougal, Dist. Atty., Gail Kika-wa McConnell, Judith Anthony, Asst. Dist. Attys., for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

STOVER, Justice.

Dana R. Shoemaker was indicted for the state jail felony offense of credit/debit card abuse for stealing credit cards. After a plea of not guilty, a jury found Shoemaker guilty of the offense as charged in the indictment. The trial court assessed a punishment of 180 days confinement in the Texas Department of Criminal Justice, State Jail Facility, and a fine of $250. Thereafter, the trial court suspended Shoemaker's sentence and placed her on community supervision for two years with enrollment in the Offender Employment Assistance Program as one of the conditions of probation. Notice of appeal was timely filed. Bringing two points of error, Shoemaker argues the trial court erred in denying a Motion to Suppress and erred in not granting a directed verdict.

## FACTUAL HISTORY

This offense occurred at Montgomery High School in Montgomery County where Shoemaker was a student. On September 7, 1994, Shoemaker had been sent out of class for being disruptive. Before going to "time out" for the rest of the class period, she reported to Mrs. Housel, the assistant principal. Mrs. Housel talked with Shoemaker in her office for approximately five minutes before they were interrupted by another student who was wanting to retrieve a backpack that was in Mrs. Housel's closet. Housel removed the backpack from her closet and stepped out of her office with the other student. The closet door was left open with Housel's purse inside the closet. While outside her office, Housel was not able to view Shoemaker since the door to the office was partially closed. Housel then went back into her office and resumed her conversation with Shoemaker after which Shoemaker was sent to "time-out."

Shortly thereafter, Housel was informed that her wallet had been found. Three charge cards were missing. Cash had also been removed from the wallet. The wallet had been found in a girl's bathroom located in C–Hall. Housel immediately called her husband so that he could notify the credit card companies. She then called Officer John Chancellor of the Montgomery Police Department to file a theft report.

Shoemaker was the only student who had been in Housel's office prior to the theft that morning. Housel was also aware of a prior theft by Shoemaker. For these reasons, Housel suspected Shoemaker was responsible for the theft.

Prior to Officer Chancellor's arrival, Housel went to Shoemaker's locker to search it. Using a master key that opened all school lockers, she opened Shoemaker's locker and searched it. She asked a teacher who was in the hall at that time to witness the search. The locker contained books and notebooks. Housel found all three of her credit cards in a notebook. She left the cards in the notebook, closed the locker, and went back to her office. Officer Chancellor was waiting for her when she got back to her office.

Shoemaker was taken out of class and brought to Housel's office. Housel informed Shoemaker that her cards had been stolen and that they had been found in the girl's restroom in B–Hall. Shoemaker corrected her, stating the cards were actually in C–Hall. Officer Chancellor informed Shoemaker that she was a suspect and read her *Miranda* warnings.

Shoemaker then consented to a search of her locker. On the way to her locker with Housel and Officer Chancellor, Shoemaker stated, "I found two credit cards on the floor and put them in my locker."[1] Shoemaker opened her locker, went through the books and notebooks hurriedly, found nothing, and stated, "I guess someone else has taken them." Housel then again asked permission to search, Shoemaker agreed, and the cards were found in the same notebook where Housel had found them in the initial search.

REASONABLENESS OF THE SEARCH

The incident that gave rise to this case involved two separate searches. Although it is the fruits of the second search that are at issue, it is the validity of the initial search Shoemaker focuses upon.

Shoemaker filed a motion to suppress the evidence seized as a result of the second search. At the suppression hearing, defense counsel argued the evidence should be deemed inadmissible because the search was conducted by a person with a personal stake in the outcome. The trial court denied the motion, and in her first point of error, Shoemaker contends this was error.

A major premise of Shoemaker's argument is that Mrs. Housel was acting not under color of school authority, but as a plain citizen, the result being a violation of Shoemaker's constitutional rights under U.S. CONST. amend. IV. and TEX. CONST. art. I, § 9. We initially recognize that if Housel was not acting under color of school authority, but as a "plain citizen," constitutional restraints against unwarranted governmental searches and seizures would not be implicated. Under federal law, for a search to be illegal, the search must be the result of state action by and through state agents acting under governmental authority or under the color of authority. The Fourth Amendment of the United States Constitution does not require the exclusion of incriminating evidence illegally obtained through a search by private citizens. *State v. Johnson,* 939 S.W.2d 586, 588 (Tex.Crim.App.1996). However, under Texas law, as provided by TEX. CODE CRIM PROC. ANN. art. 38.23 (Vernon Supp. Pamph.1998), if evidence is obtained by a *private citizen* in violation of any provision of the Constitutions or laws of Texas or the United States, such a violation *will* warrant exclusion of the evidence.[2] *Johnson,* 939 S.W.2d at 588. Therefore, we will review the record under federal and state constitutions and laws to determine if the search was proper.

Prior to the United States Supreme Court case of *New Jersey v. T.L.O.,* 469 U.S. 325, 334–35, 105 S.Ct. 733, 83 L.Ed.2d 720, 731 (1985), Texas courts held that school officials conducting in-school searches of students were private parties acting in *loco parentis*[3] and were, therefore, not subject to the constraints of the Fourth Amendment. *See, e.g., R.C.M. v. State,* 660 S.W.2d 552 (Tex.App.—San Antonio 1983, writ ref'd n.r.e.); *Ranniger v. State,* 460 S.W.2d 181 (Tex.Civ.App.—Beaumont 1970, no writ); *Mercer v. State,* 450 S.W.2d 715 (Tex.Civ.App.—Austin 1970, writ dism'd w.o.j.). In *T.L.O.,* however, the Supreme Court held that while conducting searches on school property, school officials act as representatives of the State and the constraints of the Fourth Amendment apply to their actions. *T.L.O.,* 469 U.S. at 336–37, 83 L.Ed.2d at 731; *Coronado v. State,* 835 S.W.2d 636, 639 (Tex.Crim.App.1992). In *T.L.O.,* the U.S. Supreme Court noted the delicate balance of the privacy interests of

---

**1.** At trial, Shoemaker denied making this statement.

**2.** In pertinent part, art. 38.23(a) provides: "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

**3.** In the place of a parent.

students to be weighed against the need of school officials to maintain order in a school environment:

> [T]he accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law. Rather, the legality of a search of a student should depend simply on the *reasonableness,* under all the circumstances, of the search.

*T.L.O.,* 469 U.S. at 341, 83 L.Ed.2d at 734 (emphasis added). The Court further provided that school officials need not obtain a warrant before searching a student who is under their authority. *Id.,* 469 U.S. at 340, 83 L.Ed.2d at 733.

■ To determine the reasonableness of a search, a two pronged test is employed. First, it must be determined if the action was "justified at its inception." *Id.,* 469 U.S. at 341, 83 L.Ed.2d at 734. A search of a student by a teacher or school official will be " 'justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id.,* 469 U.S. at 341–42, 83 L.Ed.2d at 734–35. Second, it must be determined whether the search was reasonably related in scope to the circumstances justifying the interference in the first place. *Id.,* 469 U.S. at 341, 83 L.Ed.2d at 734.

■ We find the initial search was justified at its inception. Mrs. Housel had reasonable grounds to suspect that Shoemaker was the person who stole the credit cards. Shoemaker was the only student who had been left unattended in Housel's office prior to the theft, and Housel was aware of other occasions of theft where Shoemaker had been nearby or implicated in the theft.

■ The initial search was also reasonably related in scope to the circumstances justifying the search in the first place. It was reasonable for Housel to suspect that the stolen credit cards might have been placed in Shoemaker's locker. And, additionally, we conclude that Shoemaker did not have a legitimate expectation of privacy in her school locker. A student's locker is school property which remains under the control of school authorities. At Montgomery High School, the lockers have built-in combination locks and the assistant principal has a key that opens all of the lockers. Students at the school are given student handbooks detailing locker policy. The handbook states the following:

### LOCKERS

Lockers remain under the jurisdiction of the school even when assigned to an individual student.... Searches of lockers may be conducted at any time there is reasonable cause to do so, regardless of whether the students are present.

. . . .

### SEARCHES OF SCHOOL PROPERTY

Lockers, desks and any other fixture or facility provided for students are the property of Montgomery I.S.D. School officials may conduct searches or use other detection devices at any time that it is felt that illegal substances or items may be found.

School officials review the handbooks with the students in an advisement period and then the students are given the handbooks to take home.[4] This required advisement period, along with the student handbook, puts students on notice that their lockers can be searched at any time.

■ Although Mrs. Housel was individually concerned as the theft involved her personal property, we view Housel's personal involvement to be innocuous. As assistant principal, Mrs. Housel had the authority to enter student's lockers. It was a normal policy of the school to enter and search lock-

---

4. A form accompanies the handbook; students and their parents are required to sign the form indicating they have read the handbook. The record did not contain a form signed by Shoemaker.

ers at any time, without the consent of the student, either for the purpose of random checks or if there was a report of a locker containing items not allowed on school premises. Students were not always present at these searches. Therefore, although the stolen items personally belonged to Mrs. Housel, she did not exceed the authority given to her by the school for searching school lockers. Indeed, she had the authority to proceed in the same manner regardless of the ownership status of the stolen items.

■ The second search was clearly justified from its inception and related in scope to the circumstances justifying the search. As noted above, Shoemaker was a likely suspect, even if the evidence discovered at the initial search is disregarded. While being questioned in Housel's office, it was clearly evident Shoemaker knew of the locality of the discarded wallet—that the discarded wallet was found in C-hall, not B-hall. She was properly given her Miranda warnings and she voluntarily consented to the search. On the way to the locker with Mrs. Housel and the officer, she revealed that she did in fact have credit cards in her locker that she "had found."

We conclude both searches were justified from their inception and reasonably related in scope to the circumstances justifying the interference in the first place. The searches were valid under both state and federal law. Accordingly, as the evidence was not obtained in violation of the law, its admission into evidence was not a violation of art. 38.23. See State v. Mayorga, 901 S.W.2d 943, 945 (Tex.Crim.App.1995). The evidence was properly admitted. Point of error one is overruled.

SUFFICIENCY OF THE EVIDENCE

■ At the close of the State's case-in-chief, Shoemaker moved for a directed verdict. The motion was overruled and, in her second point of error, Shoemaker contends this was error. She makes this argument on the ground that the State did not prove Housel was the "owner" of the credit cards as alleged in the indictment.

Shoemaker directs our attention to Jones v. State, 611 S.W.2d 87 (Tex.Crim.App.1981) for the proposition that an issuing bank or financial institution is the "owner" of an issued credit card while the person named on the card is the "cardholder." She argues that by using the term "owner" instead of "cardholder," the State had to prove Mrs. Housel was in fact the owner of the cards and that they failed to meet this burden. The State counters it was not necessary to allege the "cardholder" or "owner" of the card, and therefore, the word "owner" in the indictment is surplusage and may be disregarded. We agree.

■ A challenge to a trial court's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction. Cook v. State, 858 S.W.2d 467, 470 (Tex.Crim.App. 1993); Madden v. State, 799 S.W.2d 683, 686 (Tex.Crim.App.1990). To address such a claim, a reviewing court must review the evidence in the light most favorable to the verdict and determine if any rational trier of fact could have found evidence of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ A sufficiency of the evidence challenge is measured only by the elements of the offense as defined by a hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id.

Shoemaker was indicted under TEX. PEN. CODE ANN. § 32.31(b)(4) (Vernon 1994) which provides: A person commits an offense if "he steals a credit card or debit card or, with knowledge that it has been stolen, receives a credit card or debit card with intent to use it, to sell it, or to transfer it to a person other than the issuer or the cardholder[.]" In pertinent part, the indictment read as follows:

[T]hat *Dana R. Shoemaker,* hereinafter styled Defendant, on or about *September 07, 1994,* . . . did then and there intentionally and knowingly appropriate, by acquiring and otherwise exercising control over property, to wit: One Mastercard Credit Card . . . and one Macy's Credit Card . . ., and one USAA Sprint Card . . ., from Alice Housel, the owner thereof, without the effective consent of the owner, and with intent to deprive the owner of the property.

Sec. 32.31(b)(4) sets forth two modes by which an offense of credit/debit card abuse may be committed. *Shields v. State,* 608 S.W.2d 924, 926 (Tex.Crim.App.1980). The elements of the first mode are: (1) a person (2) steals a credit card or debit card; the second mode pronounces (1) a person (2) knowing it has been stolen (3) receives the card with the intent to (4) use it, sell it, (5) or transfer it to a person other than the issuer or cardholder. It is sufficient, as was the situation here, to allege an offense under section 32.31(b)(4) if the indictment alleges (1) a person (2) steals a credit card. *Id.* By stating that Shoemaker "did then and there intentionally and knowingly appropriate" the credit cards, the indictment sufficiently charged the first mode in which the offense of credit card abuse may be committed.[5] *See Baldwin v. State,* 538 S.W.2d 109, 111 (Tex. Crim.App.1976) (indictment which alleged "that appellant did 'knowingly and intentionally steal' the credit card" was sufficient). Therefore, it is not essential to allege the "cardholder" or "owner" as those terms are not elements of the offense. *See Ex parte Williams,* 622 S.W.2d 876, 877 (Tex.Crim. App.1981).[6] Because proof of ownership is not an element of this offense, we do not measure the sufficiency of the evidence by it.

Shoemaker additionally complains that the number on the stolen credit card does not correspond to the number in the indictment. We initially note this issue was discovered

and clarified during trial; irrespective of this, Shoemaker failed to object to the error prior to trial. Therefore, she waived complaint of the error. TEX.CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp.1998). Point of error two is overruled.

The judgment of the trial court is affirmed.

AFFIRMED.

---

**5.** Shoemaker states the indictment did not charge her with trying to use the credit card, transfer it or sell it. Such a charge would not be warranted in this case as the indictment alleged the first mode of Sec. 32.31(b)(4).

**6.** Shoemaker argues *Williams* is distinguishable in that the indictment alleged "appropriation"

instead of "stealing." "In common usage, the term 'steal' means 'to take or *appropriate* without right or leave and with intent to keep or make use of wrongfully.'" *Baldwin v. State,* 538 S.W.2d 109, 111 (Tex.Crim.App.1976) (emphasis added).