TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00030-CV






In the Matter of D. D. B.






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-16,494, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 D. D. B. appeals from the juvenile court's ruling adjudicating him delinquent and
placing him on probation. On appeal, he brings three points of error, all challenging the trial
court's overruling of his motion to suppress. We will affirm the juvenile court's judgment.


Factual and Procedural Background



 Appellant, age fourteen on the date in question, was on probation (1) under the control
of the Travis County Leadership Academy (the Academy). The Academy uses a phased program,
in which the juvenile probationers begin in full-time physical custody in a facility, progress to
spending part-time in the facility and part-time in their parents' home, and finally spend full-time
in their parents' home, with visits to the facility as mandated by the individual's probation
conditions. At the time of this incident, appellant was in phase six of the program, in which he
was spending full-time in his parents' home.

 Manny Perez is a residential treatment officer and Charles Penny is a supervising
residential treatment officer employed by the Academy. On August 21, 1998, Perez and Penny
received information from the previous night's supervisor that appellant was selling marihuana
at school. The supervisor received that information from a phase-five probationer who was
required to report such information. Perez and Penny went to appellant's school where they
contacted his teacher who sent appellant out of the classroom with Perez and Penny. They went
to the closest restroom. Perez asked appellant to empty his pockets. Appellant did so, revealing
that he possessed a greater amount of cash than he was allowed under the Academy's rules; excess
cash was considered contraband. Penny then conducted a "pat-down" and felt a bulge in one
pocket. At their request, appellant removed the item and the men discovered a "powdery
substance in a little baggie." Perez and Penny handcuffed appellant and transported him to the
Gardner-Betts juvenile detention facility. He was released to the Academy. After analysis, the
substance found in appellant's pocket proved to be cocaine.

 Appellant filed a motion to suppress the cocaine, which was overruled. After a
bench trial, the juvenile court adjudicated appellant delinquent and placed him on probation. On
appeal, he contends that the trial court erred in overruling his motion to suppress because: (1) 
the warrantless arrest was not conducted by peace officers, and private citizens have no authority
to detain and arrest a juvenile probationer; (2) the search did not occur within a secure facility;
and (3) the State failed to establish that the warrantless search was conducted pursuant to the
"special needs" exception to the warrant requirement. We will overrule all of the issues
presented. 

Discussion


Standard of Review


 A trial court's ruling on a motion to suppress will only be set aside on a showing
of an abuse of discretion. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
The trial judge is the finder of fact at a suppression hearing, and thus may believe or disbelieve
all or any part of any witness's testimony. See Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990); Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). Appellate
courts should afford almost total deference to the trial court's determination of historical facts in
the record, especially when based on an evaluation of credibility and demeanor, but may review
de novo mixed questions of law and fact if the resolution does not depend on an evaluation of
credibility and demeanor. See Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 


Status as a Probationer


 Appellant's status as a probationer is important to the resolution of this cause. In
general, probationers and parolees do not enjoy the same level of Fourth Amendment protection
accorded persons only suspected of a crime. See Griffin v. Wisconsin, 483 U.S. 868, 874-75
(1987); Garrett v. State, 791 S.W.2d 137, 140 (Tex. Crim. App. 1990); see generally, 4 Wayne
R. LaFave, Search and Seizure § 10.10 (3d. ed. 1996). This does not mean that probationers
have no protection against unreasonable searches and arrests under the Fourth Amendment or
Article I, § 9 of the Texas Constitution. See Garrett, 791 S.W.2d at 140; Tamez v. State, 534
S.W.2d 686, 692 (Tex. Crim. App. 1976). However, this diminution of protection can be
justified only to the extent actually necessitated by the legitimate demands of the probation
process. See Tamez, 534 S.W.2d at 692. A probationer may have a diminished expectation of
privacy because of the necessities of the correctional system, but his expectations may be
diminished only to the extent necessary for reformation and rehabilitation. See id. This idea is
often expressed as the "special needs" doctrine: that is, a state probation system, "like its
operation of a school, government office or prison, or its supervision of a regulated industry,
likewise presents 'special needs' beyond normal law enforcement that may justify departures from
the usual warrant and probable cause requirements." Griffin, 483 U.S. at 873-74; see Harrison
v. State, 929 S.W.2d 80, 82-3 (Tex. App.--Eastland 1996, pet ref'd).

 Appellant focuses his unlawful search argument on the status of Perez and Penny
as residential treatment officers rather than probation officers. (2) He argues that only probation
officers, who supervise the individual probationer, have the type of ongoing supervisory
relationship that justifies application of the "special needs" principle. Although he acknowledges
that residential treatment officers have the authority to search appellant while inside a secured
facility, he argues that outside that particular facility, the only authority such officers could
exercise over appellant was that of a private citizen. See Tex. Fam. Code Ann. § 52.01(4) (West
Supp. 2000) (authorizing juvenile probation officers to take child into custody). Because he
claims he committed no offense in the view of Perez and Penny, he contends they had no authority
to ask him to empty his pockets and transport him to Gardner-Betts.

 Appellant's complaint turns on his initial premise that from the time he left the
classroom and went with Perez and Penny to the bathroom, he was in their custody and under
unlawful arrest by two private citizens. We disagree that the juvenile was under detention when
his teacher asked him to leave the room or that the search by Perez and Penny was an unlawful
citizen arrest or search. We conclude that under the particular circumstances of this case,
appellant's status controls, not that of Perez and Penny. (3)

 Perez and Penny testified that even when a probationer is in a phase of the
Academy program in which he spends full time with his parents, he is still considered a resident
of the facility. Perez and Penny testified that school checks were a standard and expected part of
the program, which they performed regularly. (4) These checks ranged from simply visually
verifying the student was in the proper classroom, to talking to the probationer's teacher and
discussing any problems the teacher had observed, to checking lockers, backpacks, and pockets. 
Probationers were subject to both routine and random urinalysis, as well as other conditions (such
as keeping a daily journal in appellant's case). Appellant signed rules agreeing to random drug
checks and searches as part of his release into this intensive supervision program.

 The uncontradicted testimony before the court showed that appellant was considered
a resident of the Academy and still subject to the same types of intrusions as probationers in
earlier phases of the program. Although this particular school check was initiated pursuant to a
tip, the evidence showed that it did not exceed the program's normal, expected school check. 
As part of their oversight, Perez and Penny discovered contraband in the form of excessive cash. 
They then proceeded to perform a "pat-down"; the uncontradicted evidence showed that pat-down
searches were routinely performed on those in the program.

 School checks are a reasonable intrusion into student probationers' privacy because
they are attending a public school, and the need to protect the other students justifies this
intrusion. See Tamez, 534 S.W.2d at 692. Given the amount of time participants spend in school,
the only way to monitor a probationer's compliance with the program designed for his
rehabilitation is to monitor school attendance and performance. Id. School searches present
special circumstances under which neither probable cause nor a warrant may be required. See
New Jersey v. T.L.O., 469 U.S. 325, 340-41 (1985); Shoemaker v. State, 971 S.W.2d 178, 181-82 (Tex. App.--Beaumont 1998, no pet.). The legality of such a search depends on its
reasonableness under all the circumstances surrounding the search. See T.L.O. at 341;
Shoemaker, 971 S.W.2d at 182. The search at school was a reasonable method to deal with the
"special needs" of a juvenile probation system. We overrule issue three arguing that the "special
needs" principle did not apply. Because we have concluded that appellant's status in the Academy
program was the controlling factor, we overrule issues one and two challenging Perez and Penny's
status and performance of the search at appellant's school.

Conclusion



 We conclude that the trial court did not abuse its discretion in overruling appellant's
motion to suppress. Accordingly, we have overruled the three issues presented and affirm the
trial court's judgment adjudicating appellant delinquent.



 
 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Smith and Yeakel

Affirmed

Filed: April 6, 2000

Do Not Publish
1. The briefs do not discuss for what offense appellant was on probation, nor refer to any
location in the record with that information.
2. Residential treatment officers are classified as "juvenile corrections officers." See 37Tex.
Admin. Code §§ 344.1 (1999) (definition); 344.3(a) (qualifications). They are not juvenile
probation officers. See Tex. Hum. Res. Code Ann. § 141.062 (West 1990) (minimum standards
for probation officers).
3. We offer no opinion as to the powers of such residential treatment officers in general. Perez
and Penny were monitoring appellant as part of a specific program. We are not dealing with a
situation, for example, in which Perez and Penny received a tip from one of their probationers,
went to school, and approached a student who was not part of the program.
4. It appears that all Academy students at the same grade level attended the same school.



hat the juvenile was under detention when
his teacher asked him to leave the room or that the search by Perez and Penny was an unlawful
citizen arrest or search. We conclude that under the particular circumstances of this case,
appellant's status controls, not that of Perez and Penny. (3)

 Perez and Penny testified that even when a probationer is in a phase of the
Academy program in which he spends full time with his parents, he is still considered a resident
of the facility. Perez and Penny testified that school checks were a standard and expected part of
the program, which they performed regularly. (4) These checks ranged from simply visually
verifying the student was in the proper classroom, to talking to the probationer's teacher and
discussing any problems the teacher had observed, to checking lockers, backpacks, and pockets. 
Probationers were subject to both routine and random urinalysis, as well as other conditions (such
as keeping a daily journal in appellant's case). Appellant signed rules agreeing to random drug
checks and searches as part of his release into this intensive supervision program.

 The uncontradicted testimony before the court showed that appellant was considered
a resident of the Academy and still subject to the same types of intrusions as probationers in
earlier phases of the program. Although this particular school check was initiated pursuant to a
tip, the evidence showed that it did not exceed the program's normal, expected school check. 
As part of their oversight, Perez and Penny discovered contraband in the form of excessive cash. 
They then proceeded to perform a "pat-down"; the uncontradicted evid