

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. **PD-1024-17** and NO. **PD-1025-17**

**EX PARTE LISA ANN FINEBERG, Appellant**

ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FIFTH COURT OF APPEALS
DALLAS COUNTY

RICHARDSON, J., delivered the opinion of the Court in which KELLER, P.J., KEASLER, ALCALA, YEARY, and WALKER, JJ., joined. HERVEY and NEWELL, JJ., concurred in the result. KEEL, J., dissented.

## OPINION

Appellant, Lisa Ann Fineberg, filed an Article 11.072 application for writ of habeas corpus[1] challenging the trial court's modification to the conditions of her community supervision that precluded Appellant from having any access to her own minor children. The trial court denied Appellant's writ application, and the court of appeals affirmed the trial

---

[1] TEX. CODE CRIM. PROC. art. 11.072.

court's denial of Appellant's writ application.[2]  We granted Appellant's petition for discretionary review to review the decision of the court of appeals.

We hold that, because the challenged modification infringed on Appellant's fundamental constitutional right as a parent to have contact with her own children, the trial court should have held a hearing before issuing the modification.  Following the trial court's modification of her conditions that prohibited her from having contact with her own children, the Appellant was notified of those changes and refused to sign those conditions.  Appellant's attorney subsequently filed objections to those modifications and, failing to obtain relief, filed an Article 11.072 writ application.  Having failed to provide the Appellant with a hearing at the time of the initial modification, under the facts of this case, the trial court could have remedied the situation by conducting a hearing before ruling on the 11.072 writ application.  Since no hearing has ever been held allowing Appellant an opportunity to present evidence to support her challenge to the modification in question, we hold that the court of appeals erred in affirming the trial court's denial of Appellant's claim for habeas relief.

We reverse the judgment of the court of appeals and vacate the order issued by the trial court denying habeas relief to Appellant under Article 11.072.  We remand the case to the trial court with instructions to remove the modification added to the conditions of

---

[2] *Ex parte Fineberg*, No. 05-17-00241-CR, No. 05-17-00242-CR, 2017 WL 3474014 (Tex. App.— Dallas Aug.14, 2017).

community supervision that denies Appellant access to her own children. If the trial court wishes to reimpose that same restriction on Appellant, it must proceed in accordance with this opinion.

## BACKGROUND

Appellant was initially charged by indictment with two offenses of indecency with a child. As partial consideration for a plea agreement, the State dismissed the indecency charges and issued two informations that charged Appellant with injury to a child. Under the plea agreement, Appellant agreed to plead guilty to the two offenses of injury to a child and be sentenced to ten years' imprisonment, with the sentences in each case probated for ten years to run concurrently. The plea agreement specifically stated that the "sex offender registration" requirement "does not apply," but the plea agreement included the conditions that Appellant have "no contact with complainant," "sex offender evaluation and treatment," and "sex offender conditions." The trial court's March 24, 2016, judgment in each case included the following "special findings or orders:"

> NO CONTACT WITH /CW, NO CONTACT WITH ANY PERSON UNDER
> THE AGE 17 EXCEPT BIOLOGICAL CHILDREN, COMPLIANCE WITH
> SEX OFFENDER CONDITIONS.

The Conditions of Community Supervision, also dated and signed on March 24, 2016, specified that "the Court shall determine the terms and conditions of [Appellant's] [S]upervision, and may at any time during the period of Supervision, alter or modify the conditions of [Appellant's] Supervision." The Conditions of Community Supervision

specified that Appellant was "not [to] . . . have any form of contact, be it in person, by mail, telephone or any form of communication with any child 17 years of age or younger, directly or indirectly, EXCEPT FOR BIOLOGICAL CHILDREN."

As ordered, Appellant began sex offender counseling in mid to late April, 2016.[3] On June 21, 2016, which was about a month-and-a-half into Appellant's weekly group therapy sessions, the trial court issued an order modifying Appellant's conditions of community supervision by prohibiting her from being within 1000 feet of any child (including her own children).[4] The trial court entered this order without notifying Appellant or her attorney ahead of time and without conducting any type of formal investigation or hearing. The record is unclear how and why the trial court came to the decision to modify Appellant's conditions of community supervision removing her access to her own children.[5] There was no motion to revoke contained in the record, no documentation from Appellant's probation officer, and no motion to modify the conditions.

---

[3] Treatment Progress Report notes (some of which appear to have been generated by an intern) were made part of the record. They reflect the impressions of the therapist, as well as other participants in the sex-offender counseling sessions. These Treatment Progress Report notes were included as part of the appellate court's record in this case.

[4] At the time of this modification, all three of her children were under the age of eighteen. One daughter was seventeen, another daughter was fifteen, and her son was eleven.

[5] We note, however, that a notation made on a progress report regarding a group session on June 21, 2016, reflected that Appellant told the group that she had just been told that day that she would no longer be allowed to have contact with her own children. The entry stated that "[t]he group members attempted to explain to her that she had not been initially honest and therefore her conditions were changed."

Appellant refused to sign this third modification order, she filed objections to the order, and she filed a motion to modify the conditions to allow her to have contact with her own children. In her motion to modify, Appellant claimed that she was denied due process, asserting that she "never was afforded a hearing," and that there is no evidence in the record to support a determination that Appellant cannot be trusted with her own children, or that this was in the children's best interest. The trial court denied her motion.

Appellant then filed an application for a post-conviction writ of habeas corpus pursuant to the provisions of Code of Criminal Procedure Article 11.072,[6] asserting that the trial court improperly modified her original Conditions of Community Supervision, which Appellant entered into pursuant to a plea agreement with the State. Appellant claimed, in pertinent part, that the condition that she avoid contact with all children, including her own, violated her right to substantive and procedural due process of law. In support of her substantive due process claims, Appellant argued that the condition prohibiting her from residing with or spending time with her own children interfered with her fundamental right to establish a home to raise her children and was not rationally related to a legitimate state interest. Appellant asserted that no individualized review of her relationship with her children was conducted, leaving "nothing in the record" to support a finding that she

---

[6] TEX. CODE CRIM. PROC. art. 11.072. *See also Ex parte Torres*, 483 S.W.3d 35, 42 (Tex. Crim. App. 2016) ("Code of Criminal Procedure Article 11.072 is 'the exclusive means by which the district courts may exercise their original habeas jurisdiction under Article V, Section 8, of the Texas Constitution' in cases involving an individual who is serving a term of community supervision.") (citing *Ex parte Villanueva*, 252 S.W.3d 391, 397 (Tex. Crim. App. 2008)).

"presents a danger to her own children or will do so in the next ten years." Appellant claims that the trial court should not be allowed to impose the modified condition without first making specific findings of evidence supporting the modification and the necessity of restricting her contact with her children.

The trial court did not hold a hearing before modifying Appellant's community supervision conditions, nor did the trial court hold a hearing before denying Appellant's 11.072 writ application. The trial court did, however, issue an Order Denying Applicant's Application for Writ of Habeas Corpus, which included "Findings of Fact and Conclusions of Law." The trial court concluded that Appellant had not met her burden to show that the trial court abused its discretion or violated her right to due process.

Appellant appealed the trial court's denial of relief to the Fifth Court of Appeals, asserting, among other points of error, that the trial court's third modification to the conditions of her community supervision, ordering that she not have contact with any children (including her own), violated her substantive and procedural due process rights. The court of appeals affirmed the trial court's ruling, concluding that Appellant failed to carry her burden to show that the trial court's modification violated her substantive or procedural due process rights.[7] Appellant petitioned this Court to review the holding of the court of appeals.

## ANALYSIS

---

[7] *Ex parte Fineberg*, 2017 WL 3474014 at *9.

An appellate court reviewing a habeas judge's order granting or denying an Article 11.072 application must view the evidence in the record in the light most favorable to the judge's ruling and must uphold that ruling absent an abuse of discretion.[8]  In a post-conviction writ application filed pursuant to Article 11.072, the trial judge is the sole finder of fact, and thus we generally afford almost total deference to a trial court's factual findings when they are supported by the record and when they are based on credibility and demeanor.[9]  But if the outcome turns upon a resolution of mixed questions of law and fact that do not turn on witness credibility, we review the habeas court's determination de novo.[10]

It is true that an applicant seeking post-conviction habeas corpus relief bears the burden to prove her claim by a preponderance of the evidence.[11]  But we cannot grant deference to implied factual findings "if [we] are unable to determine from the record what the trial court's implied factual findings are."[12]  In this case, the trial court judge's Findings

---

[8] *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006).

[9] *Ex parte Garcia*, 353 S.W.3d 785, 787-88 (Tex. Crim. App. 2011); *State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) (We afford this level of deference "even when no witnesses testify and all of the evidence is submitted through affidavits, depositions, or interrogatories.").

[10] *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

[11] *Ex parte Torres*, 483 S.W.3d at 43 (citing *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002)).

[12] *Ex parte Peterson*, 117 S.W.3d 804, 820 (Tex. Crim. App. 2003), ("We cannot agree that this legal conclusion naturally flows from the objective facts and circumstances in the record."), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007).

of Fact do not explain why the judge made the modification to Appellant's conditions of community supervision to eliminate Appellant's right to contact her children. There were no examinations (in court or out-of-court) of Appellant, her husband, her children, the adults who are now caring for the children, the therapist conducting the sex offender counseling sessions, the intern who took some of the treatment progress notes, or any other factual or expert witness. Although the trial court judge made factual findings, none of her factual findings supported her decision to alter Appellant's conditions of community supervision such that Appellant would be precluded from having access to her own children.

The Supreme Court has frequently emphasized "the importance of the family."[13] The right to "establish a home, and bring up children" has long been recognized as a fundamental liberty interest, and the State may not interfere with that interest without due process of law.[14] "The rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man,' and '(r)ights far more precious . . . than property rights.'"[15] "The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment."[16] Because the relationship between parent and child is constitutionally

---

[13] *Stanley v. Illinois*, 405 U.S. 645, 651 (1972).

[14] *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

[15] *Stanley*, 405 U.S. at 651 (citations omitted).

[16] *Id*. (citations omitted).

protected, parents have a fundamental right to make decisions concerning the care, custody, and control of their children.[17] Moreover, a child has a fundamental interest in the continuation of parental care and support, and a right to be free of governmental action that would jeopardize it.[18]

We recently recognized in *Schlittler v. State*[19] that a parent's right in the care and custody of their children is a fundamental right:

> A fundamental right is one that is, objectively, "deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty," such that "neither liberty nor justice would exist if they were sacrificed." One of these fundamental liberty interests, long recognized by the Supreme Court, is the interest that parents have in the care, custody, and control of their children.[20]

We observed, however, that "this interest is not absolute and may be limited where necessary in order to effectuate the compelling governmental interest in the protection of children."[21]

---

[17] *Troxel v. Granville*, 530 U.S. 57, 65 (2000) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court.").

[18] *Bowen v. Gilliard*, 483 U.S. 587, 613 (1987).

[19] *Schlittler v. State*, 488 S.W.3d 306 (Tex. Crim. App. 2016), *cert. denied* 137 S. Ct. 1336 (2017).

[20] *Id*. at 313 (citations omitted).

[21] *Id*. (citing *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 27(1981) (observing that parental rights "undeniably warrant [ ] deference and, absent a powerful countervailing interest, protection," but further noting that the state has an "urgent interest" in the welfare of the child)). *See also Santosky v. Kramer*, 455 U.S. 745, 753-54, 769 (1982) (recognizing fundamental liberty interest parent has in his or her child and concluding that state must provide parent with fundamentally fair procedures, including clear-and-convincing evidentiary standard, when seeking to terminate parental rights).

In this case, however, there is no evidence contained in the record that the State's compelling interest in protecting the children necessitates removing the mother from the home. There is no evidence of any kind that the emotional and physical interests of Appellant's children would be harmed by Appellant's continued access to her children or be benefitted by prohibiting her access. There is no evidence regarding what would be in the best interests of the children. The only documentation in the appellate court's record are the therapist's Treatment Progress Reports, but there is nothing in the record that ties those reports to the trial court's third modification. Nowhere in the trial court's Findings of Fact and Conclusions of Law are the Treatment Progress Reports mentioned. In fact, the trial court's order denying Appellant's writ application is based on the trial court's consideration of only "the allegations contained in Applicant's Application for Writ of Habeas Corpus, the State's Response to the Application, . . . and the original trial court file and its contents."[22]

The basis of Appellant's claim is that, under these facts, the modification of her probation conditions and the denial of her writ application challenging such modification, without a hearing, deprived her of a fundamental right without proper due process. As the Supreme Court stated in *Morrissey v. Brewer*, "[w]hether any procedural protections are due

---

[22] The only reference to Appellant's conduct after she was placed on community supervision is found in Finding of Fact and Conclusion of Law Number 32, wherein the trial court suggests that its modification was reasonable "given the circumstances of her case and her conduct on probation." But there is no reference to any evidence that indicates what that "conduct on probation" was.

depends on the extent to which an individual will be 'condemned to suffer grievous loss.'"[23]

According to *Morrissey*, the process that is due depends upon the "particular situation:"

> The question is not merely the "weight" of the individual's interest, but whether the nature of the interest is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment. Once it is determined that due process applies, the question remains what process is due. It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." To say that the concept of due process is flexible does not mean that judges are at large to apply it to any and all relationships. It's flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure.[24]

It is hard to imagine a more grievous loss for a parent than to suddenly be prohibited from having access to his or her own children.

The State argues, however, that the trial court was not obligated to hold a hearing before issuing the modification. We agree that trial courts have wide-ranging authority when imposing community supervision conditions.[25] The Texas Code of Criminal Procedure gives

---

[23] 408 U.S. 471, 481 (1972) (citing *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)).

[24] *Morrissey*, 408 U.S. at 481 (citations omitted).

[25] *Tamez v. State*, 534 S.W.2d 686, 691 (Tex. Crim. App. 1976); *Hernandez v. State*, 556 S.W.2d 337, 342-43 (Tex. Crim. App. 1977) (The conditions are not limited to those suggested in Article 42.12, but they should be reasonable—i.e., they "should have a reasonable relationship to the treatment of the accused and the protection of the public.").

the trial court the power to "impose any reasonable [community supervision] condition . . . designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."[26]  Moreover, the statute unambiguously permits the trial court to "at any time during the period of community supervision, alter or modify the conditions."[27]

We also recognize that there is no statutory requirement that the trial court hold a hearing prior to modifying a probationer's conditions.  In fact, in *Sanchez v. State*,[28] this Court held that the trial court had the authority to modify the probationer's conditions without holding a hearing.[29]  However, *Sanchez* is not controlling here because the modifications in *Sanchez* did not affect a fundamental right protected by the Constitution. Moreover, the record in *Sanchez* supported a finding that the modifications were reasonable and could have been included in the original probation conditions.[30]  In this case, however,

---

[26] TEX. CODE CRIM. PROC. art. 42.12 § 11(a) (Vernon 1965); *see also Tamez*, 534 S.W.2d at 691 (noting a condition should "have a reasonable relationship to the treatment of the accused and the protection of the public.").  Effective January 1, 2017, Texas Code of Criminal Procedure, Article 42.12 ("Community Supervision") was recodified as a new Chapter 42A.  This was a nonsubstantive reorganization of the community supervision laws.

[27] TEX. CODE CRIM. PROC. art. 42.12 § 11(a).

[28] 603 S.W.2d 869 (Tex. Crim. App. 1980).

[29] *Sanchez*, 603 S.W.2d at 870.

[30] *Sanchez*, 603 S.W.2d at 870.

there is nothing in the record to support our reaching a similar conclusion.[31]

What makes this case unique, therefore, is the fact that, at the time of Appellant's plea and sentencing, all of the parties were on the same page, and there is nothing in the record to suggest that anything had changed since Appellant's plea regarding her behavior or actions, or that she had not followed her probation conditions. At the time of the plea, the State possessed all of the facts regarding the originally charged offenses and had no objections to Appellant having contact with her own children. The trial court judge was fully aware of the underlying facts, and a Pre-Sentence Investigation Report was generated and included in the record. Although no transcript from the plea proceeding was included in the record, it is clear from the judgment and from the trial court's Finding of Fact No. 4 that Appellant would have access to her own children.

We agree with Appellant that the trial court's third modification of the terms of her probation deprived her of a fundamental right—a parent's right to care, custody, and management of her own child—and that Appellant was deprived of that right without being afforded proper due process. Therefore, before imposing such modification, the trial court should have first afforded Appellant proper procedural due process in the form of a hearing.

---

[31] In its denial order, the trial court cites to *Ex parte Alakayi* 102 S.W.3d 426 (Tex. App.— Houston [14th Dist.] 2003, pet. ref'd) to support its conclusion that Appellant failed to present sufficient evidence that the trial court's modification was unreasonable. In *Ex parte Alakayi*, however, the writ applicant was granted a habeas corpus hearing, which "afforded [the applicant] an opportunity to present evidence in support of his challenges" to the modification that deprived him of contact with his son. *Id*. at 432. In this case, Appellant was not granted such a hearing.

## **CONCLUSION**

Under the facts of this case, the court of appeals should not have affirmed the trial court's denial of Appellant's habeas application when there had been no hearing conducted by the trial court, either prior to the issuance of the modification in question, or prior to ruling on the writ application. We reverse the judgment of the court of appeals and vacate the order issued by the trial court denying Appellant habeas relief. We remand the case to the trial court with instructions to remove the modification added to the conditions of community supervision that denies Appellant access to her own children. If the trial court wishes to reimpose that same condition on Appellant, it must proceed in accordance with this opinion.

DELIVERED:            October 3, 2018

DO NOT PUBLISH