*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★ ★ ★ ★

## MEMORANDUM OPINION

No. 04-08-00634-CV

In the Matter of **P.P., III**, a Juvenile

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-JUV-01429
Honorable Carmen Kelsey, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
              Karen Angelini, Justice
              Phylis J. Speedlin, Justice

Delivered and Filed:  February 11, 2009

AFFIRMED

In this appeal we are asked to review the constitutionality of a routine administrative search conducted as P.P., III was entering the alternative high school he attended. A small amount of marihuana was found during the search of P.P., and he was charged with possession of less than two ounces of marihuana in a drug-free zone. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 2003). After the trial court denied his motion to suppress evidence, P.P. pled true to the offense, was adjudicated by the trial court, and in accordance with a plea bargain, placed on probation for a six-month period. In one issue on appeal, P.P. contends the trial court erred in denying his motion to suppress. We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Jaime Perales performs routine searches of students entering an alternative high school in Edgewood Independent School District. During these searches, students must take off their shoes, socks, and belt, and submit to a pat down. During one of these routine searches, Officer Perales felt a little bulge inside P.P.'s right front pocket. The officer swiped his finger into P.P's pocket and pulled out a plastic baggy containing a green leafy substance. The substance was tested and came back positive for marihuana.

The trial court held a hearing on P.P.'s motion to suppress any evidence or statements made by him. After hearing testimony from Officer Perales, the trial court denied P.P.'s motion. P.P. was adjudicated and placed on probation for a six-month period. The trial court granted P.P. the right to appeal any pretrial matters.

## MOTION TO SUPPRESS

In his only issue on appeal, P.P. argues that the trial court abused its discretion when it denied P.P.'s motion to suppress, claiming the warrantless administrative search of P.P. was unreasonable and violated his rights guaranteed by the Fourth and Fourteenth Amendments of the Constitution of the United States.

We review the ruling on a motion to suppress in a juvenile case using an abuse of discretion standard of review. *See In re R.J. H.,* 79 S.W.3d 1, 6 (Tex. 2002). An appellate court reviewing such a ruling defers to the trial court's findings of fact but conducts a *de novo* review of the court's application of law to those facts. *Id.; see State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); *Guzman v. State,* 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). The reviewing court may not

tamper with substantiated findings absent an abuse of discretion. *See Etheridge v. State,* 903 S.W.2d 1, 15 (Tex. Crim. App. 1994).

To the extent that the trial court's findings do not sufficiently address all factual issues, the appellate court examines the record in the light most favorable to the trial court's verdict. *See State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). Viewing the evidence in that light, the reviewing court may infer all findings necessary to support the trial court's ruling. *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000). The court must defer to those findings and must sustain the lower court's ruling if the record reasonably supports the ruling and the ruling is correct on any theory of law applicable to the case. *See Ross,* 32 S.W.2d at 855-56.

It is undisputed that the search of P.P. falls within the general category of "administrative searches." *See, e.g., Camara v. Municipal Court,* 387 U.S. 523, 537 (1967). An administrative search is conducted as part of a general regulatory scheme in furtherance of an administrative purpose, rather than as part of a criminal investigation to secure evidence of a crime. *See Gibson v. State,* 921 S.W.2d 747, 758 (Tex. App.—El Paso 1996, pet. denied) (citing *United States v. Davis,* 482 F.2d 893, 908 (9th Cir. 1973)). Administrative searches may be permissible under the Fourth Amendment although not supported by a demonstration of probable cause directed to a particular place or person to be searched. *Id*. An administrative search, which is designed to prevent the occurrence of a dangerous event, is aimed at an entire group or class of people rather than one particular person. *Id.* (quoting *People v. Dukes,* 580 N.Y.S.2d 850, 851-52 (City Crim. Ct.1992)). An administrative search will be upheld as reasonable if the intrusion involved is no greater than necessary to satisfy the governmental interest forming the basis for the search. *Id; see, e.g., Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 664-65 (1995) (random drug testing of athletes); *Michigan Dep't of State Police v. Sitz,* 496 U.S. 444,

455 (1990) (random sobriety checkpoints); *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 633 (1989) (post-accident drug testing of railroad employees)*.*

The Fourteenth Amendment's prohibition of unreasonable searches and seizures applies to searches of students by school authorities. *See New Jersey v. T.L.O.,* 469 U.S. 325, 333, (1985). However, "[a] student's privacy interest is limited in a public school environment where the State is responsible for maintaining discipline, health, and safety . . . . Securing order in the school environment sometimes requires that students be subjected to greater controls than those appropriate for adults." *Board of Education v. Earls,* 536 U.S. 822, 830-31 (2002); *Marble Falls Indep. Sch. Dist. v. Shell,* No. 03-02-00652-CV, 2003 WL 1738417, at *5 (Tex. App.—Austin April 3, 2003, no pet.) (not designated for publication). The legality of a search of a student depends on the reasonableness of the search under the circumstances. *T.L.O.,* 469 U.S. at 341. When reviewing the legality of a student search, we remember the diminished expectation of a student's privacy in a school setting and the State's compelling interest in maintaining a safe and disciplined environment. *See* Tex. Educ. Code Ann. § 4.001 (Vernon 2003) (one of the objectives of public education is that "[s]chool campuses will maintain a safe and disciplined environment conducive to student learning").

Administrative searches at schools have been upheld in various circumstances. *See Vernonia Sch. Dist. 47J v. Acton,* 515 U.S. 646, 664-65 (1995) (upholding random drug testing of athletes without any individualized suspicion); *Earls,* 536 U.S. at 838 (approving random drug testing for all students participating in extracurricular activities). In *In re O.E.*, No. 03-02-00516-CV, 2003 WL 22669014 (Tex. App.—Austin Nov. 13, 2003, no pet.), a student, O.E., was adjudicated for possession of marihuana in a drug free zone, just as in this case. The student was subjected to a routine search upon entering an alternative learning center. *Id.* at *1. Upon entering the school each

day, all students had to pass through a metal detector, be patted down, empty their pockets onto a tray, remove their shoes, and place their shoes on a table for inspection. *Id.* at *2. Before attending the center, all students and their parents were required to attend an orientation session at which they were informed of school policies, including the search policy. *Id.* An officer found marihuana in O.E.'s shoe during the routine search. *Id.* at *1. O.E. appealed the denial of his motion to suppress, and our sister court held:

> The search procedure was justified at its inception as a method of furthering the State's interest in maintaining a safe and disciplined learning environment in a setting at high risk for drugs and violence . . . . [The search procedure was] tailored to meet the needs of a school setting at higher risk than usual for disciplinary problems involving weapons and drugs. The intrusion on the students' more limited expectation of privacy is reasonable. Accordingly, the search was an administrative search of the sort permissible under the Fourth Amendment.

*Id*. at *3-4. The analysis and reasoning utilized in *In re OE* can be applied to the case at hand.

As was the case in *In re O.E.*, the record in this case established that prior to entering the alternative school, all students and parents are required to complete an orientation session which includes an overview of the school rules and policies, and the students are required to sign a contract which includes an agreement to be searched each day before entering the school. P.P. clearly had notice of the routine search requirement, which reduced his expectation of privacy. *See Shoemaker v. State*, 971 S.W.2d 178, 182 (Tex. App.—Beaumont 1998, no pet.) (noting that a student had no reasonable expectation of privacy in a locker when the student handbook warned lockers could be searched any time there was reasonable cause to do so).

In light of a student's diminished expectation of privacy, the search procedure imposed on the students was relatively unobtrusive. As noted, administrative searches at schools have been upheld in various circumstances. In addition, the court in *In re O.E.* upheld a school search which

mirrored the search conducted in the present case. *In re O.E.*, 2003 WL 22669014 at *4. Consequently, we hold the search conducted on P.P. and his fellow students was not overly obtrusive.

Finally, the needs of the alternative school were met by the uniform search instituted for students entering the school. Officer Perales testified that the main objective of the search was the security of the students and staff at the school. Officer Perales stated that students were not allowed to come into the school with anything on them other than their uniform; everything else was provided for them. He also noted that the school employed a uniform search procedure such that every student was searched upon entering the school, no matter the circumstances. *See In re O.E.*, 2003 WL 22669014 at *4 (stating that "[s]uch uniformity serves as a safeguard against an abuse of discretion on the part of school officials in making a determination of which persons will be searched"). Accordingly, the search was an administrative search of the sort permissible under the Fourth Amendment. *See Earls,* 536 U.S. at 838; *Vernonia,* 515 U.S. at 664-65

## CONCLUSION

The trial court did not abuse its discretion in denying P.P.'s motion to suppress all physical evidence and statements taken from him. Accordingly, we affirm the trial court's judgment.

Catherine Stone, Chief Justice