

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00048-CR

JOE BRADLEY COCHRAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 27507

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Chief Justice Morriss

OPINION

Joe Bradley Cochran was on deferred adjudication community supervision for drug possession when local law enforcement officers searched his motel room and found drugs. From Cochran's resulting conviction on two counts of drug possession, he appeals, asserting that the trial court erred in overruling his motion to suppress the drugs found in the search because the term of his community supervision allowing a search of his residence was constitutionally defective and did not authorize the search of the motel room in which he was staying at the time of the search. We disagree and affirm the judgment of the trial court because (1) Cochran's constitutional rights were not violated and (2) the search of Cochran's motel room was authorized.

Cochran had been placed on deferred adjudication community supervision for possession of less than one gram of methamphetamine.[1] The terms and conditions of Cochran's community supervision required him to "[s]ubmit to a search of [his] person, residence, or vehicle at any time by . . . law enforcement official[s], for illegal drugs or contraband."

Cochran became unwittingly entangled with the Paris Police Department's investigation of Amanda Hurley, an investigation initiated based on an unnamed confidential informant's tip that Hurley might be a drug dealer. Detectives Leigh Foreman and Josh Crawford tried and failed to conduct a controlled purchase of drugs between Hurley and the confidential informant; Hurley had no drugs to sell. During their investigation, officers discovered that Hurley had visited an unnamed

---

[1]In companion cause number 06-18-00049-CR, Cochran appeals from the trial court's revocation of his community supervision.

supplier at the local Days Inn motel. The motel clerk was questioned and reported that Hurley visited Cochran in that room.

That led to the search in question. After the trial court overruled Cochran's motion to suppress the fruit of that search, Cochran pled guilty to, and was convicted of, possessing, in a drug free zone, first, a penalty-group-1 controlled substance in an amount of four grams or more but less than 200 grams and, second, a penalty-group-3-or-4 controlled substance in an amount of less than twenty-eight grams. The trial court sentenced Cochran to fifteen years' and five years' imprisonment, respectively.

(1) *Cochran's Constitutional Rights Were Not Violated*

Cochran argues that the trial court erred in overruling his suppression motion because, in the absence of reasonable suspicion, the search based on a term of his community supervision violated his constitutional rights to privacy.

Foreman and Crawford testified that they detained Cochran in the motel lobby after discovering that he was on community supervision for a drug-related offense. They informed Cochran that they planned to search his motel room based on the term of his community supervision requiring him to "[s]ubmit to a search of [his] … residence . . . at any time by . . . law enforcement official[s], for illegal drugs or contraband." Officers took Cochran's room key, after he questioned whether this term authorized a search of a motel room rather than his house at which he resided. Officers arrested Cochran after they found methamphetamine, Alprazolam, and marihuana in his motel room.

3

At the suppression hearing, Foreman admitted that there was no warrant, exigent circumstance, or probable cause authorizing entry into Cochran's motel room.[2] Argument at the hearing focused on whether the term allowing search of Cochran's residence was valid and whether the motel room constituted his residence. Cochran introduced a copy of his driver's license, which reflected the address he had registered with the community supervision office as his residence. In response to these arguments, the State pointed to records produced from the motel clerk establishing that Cochran had stayed at the Days Inn for thirteen of the first twenty days in July.[3] The motel clerk testified that Cochran always paid in cash and had already paid to spend the night of July 20 at the motel.

After the suppression hearing, the trial court entered a written order, which found that the motel room was a residence and concluded that the Department's search was authorized by the terms and conditions of Cochran's community supervision.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor while reviewing de novo other application-of-law-to-fact issues. *See Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Appellate courts should also afford nearly total deference to trial court rulings on application-of-law-to-fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and

[2]Foreman clarified that the Department had no information that anyone had purchased drugs from Cochran.

[3]Specifically, Cochran spent the nights of July 1–5, 8–13, 16, and 19 at the motel.

4

demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts may review mixed questions of law and fact not falling within this category on a de novo basis. *Id.* We must affirm the decision if it is correct on any theory of law that finds support in the record. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).

Texas trial courts are afforded "broad discretion" in devising terms of community supervision. *Butler v. State*, 189 S.W.3d 299, 303 (Tex. Crim. App. 2006); *Briseño v. State*, 293 S.W.3d 644, 647 (Tex. App.—San Antonio 2009, no pet.). Trial judges "may impose any reasonable condition that is . . . designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." TEX. CODE CRIM. PROC. ANN. art. 42A.301(a) (West 2018); *see* TEX. CODE CRIM. PROC. ANN. art. 42A.104(a) (West 2018).

A criminal defendant does not have a right to community supervision, but it is a matter of contract setting out terms between the trial court and the defendant. *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). Contractual terms of community supervision are accepted unless objected to when established. *Id.* In the absence of such an objection, the defendant is seen to have waived "any rights encroached on by the terms of the contract." *Id.* "[A] defendant who is fairly notified of the conditions of community supervision at a hearing at which he has an opportunity to object forfeits any later complaint about those conditions, as long as those conditions do not involve a systemic right or prohibition." *Dansby v. State*, 448 S.W.3d 441, 447 (Tex. Crim. App. 2014).

A term of community supervision generally authorizing a search and seizure at any time requested by any law enforcement officer, without further restriction, is unreasonable and invalid.

5

*Tamez v. State*, 534 S.W.2d 686, 690 (Tex. Crim. App. 1976) (acceptance of such condition "was in legal effect coerced"). However, as explained below, a condition of community supervision authorizing a search does not violate the Fourth Amendment or Article I, Section 9, if it is reasonably restricted to promote the purposes of community supervision.

The Fourth Amendment to the United States Constitution and Article 1, Section 9, of the Texas Constitution prohibit unreasonable searches and seizures. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. "The purpose of both the Fourth Amendment and article I, section 9 is to safeguard an individual's legitimate expectation of privacy from unreasonable governmental intrusions." *McArthur v. State*, 1 S.W.3d 323, 329 (Tex. App.—Fort Worth 1999, pet. ref'd). "[P]robationers and parolees do not enjoy the same level of Fourth Amendment protection accorded defendants only suspected of a crime." *Garrett v. State*, 791 S.W.2d 137, 140 (Tex. Crim. App. 1990). Rather, persons subject to community supervision enjoy "only conditional liberty properly dependent on observance of special supervisory restrictions." *McArthur*, 1 S.W.3d at 332 (citing *United States v. Tonry*, 605 F.2d 144, 150–51 (5th Cir. 1979), *overruled on other grounds by Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93 (1998)). Thus, "a community supervision 'condition is not necessarily invalid simply because it affects [the defendant's] ability to exercise constitutionally protected rights.'" *Briseño*, 293 S.W.3d at 648 (quoting *Lee v. State*, 952 S.W.2d 894, 900 (Tex. App.—Dallas 1997, no pet.) (en banc)). This is because "probation supervision g[ives] rise to a special state need 'permitting a degree of impingement on privacy that would not be constitutional if applied to the public at large.'" *Garrett*, 791 S.W.2d at 140 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987)).

6

Although Cochran did not consent to the search of the motel room, he had previously agreed to submit to searches of his person, residence, and vehicle for illegal drugs or contraband as a condition of receiving his bargained-for community supervision.[4] Cochran argues that reasonable suspicion was required to support the search even considering this term of his community supervision. In support, he cites *United States v. Knights*, 534 U.S. 112 (2001). There, the United States Supreme Court was asked to decide whether a search violated Knights' Fourth Amendment rights even though it was conducted pursuant to a condition that Knights would "[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *United States v. Knights*, 534 U.S. 112, 114 (2001). However, the Court "did not decide whether Knights' acceptance of the search condition constituted consent in the . . . sense of a complete waiver of his Fourth Amendment rights" because it concluded that, irrespective of the condition of Knights' probation, (1) a warrantless search could be conducted on reasonable suspicion alone because probationers have a lesser expectation of privacy in the face of heightened governmental interest to apprehend violators and protect potential crime victims, and (2) reasonable suspicion supported the search. *Id.* at 118, 121.

Importantly, *Knights* did not decide that reasonable suspicion was required even if a defendant validly waived his Fourth Amendment rights. In fact, five years later, the United States

---

[4]A search conducted without a warrant issued with probable cause is deemed per se unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). However, the grant of the consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Id.*; *Carmouche*, 10 S.W.3d at 331. Here, we do not decide whether Cochran's community supervision term constituted "an advance irrevocable waiver of Fourth Amendment rights." *State v. Villarreal*, 475 S.W.3d 784, 802 (Tex. Crim. App. 2014).

Supreme Court decided the question presented in *Knights* "[of] whether the search would have been reasonable under the Fourth Amendment had it been solely predicated on the condition of probation," "albeit in the context of a parolee search." *Sampson v. California*, 547 U.S. 843, 850 (2006). Finding that suspicionless searches of parolees based on state law requiring consent "in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause" served governmental interests in reducing recidivism, the Court concluded that the suspicionless search did not violate the Fourth Amendment because the parolee "did not have an expectation of privacy that society would recognize as legitimate." *Id.* at 846, 852.

Here, we find that the terms and conditions of Cochran's community supervision alone supported the search because (1) the trial court found that the terms were expressly acknowledged by Cochran and that Cochran's "acceptance of . . . the terms of probation [was] done freely, knowingly, and voluntarily," (2) the terms were entered pursuant to a negotiated plea agreement in exchange for deferred adjudication, and, most importantly, (3) the terms and conditions did not violate Cochran's Fourth Amendment and Article I, Section 9, rights.

Cochran cites to *Tamez* in arguing that the condition authorizing the search was unconstitutional. There, the Texas Court of Criminal Appeals found invalid a condition of community supervision requiring a defendant to "[s]ubmit his person, place of residence and vehicle to search and seizure at any time of the day or night, with or without a search warrant, whenever requested to do so by the Probation Officer or any law enforcement officer." *Tamez*, 534 S.W.2d at 690. The Court noted that, while "[a] probationer may be entitled to a diminished

8

expectation of privacy because of the necessities of the correctional system, . . . his expectations may be diminished only to the extent necessary for his reformation and rehabilitation." *Id.* at 692. The Court reasoned that "diminution of Fourth Amendment protection and protection afforded by Article I, Section 9, Texas Constitution, can be justified only to the extent actually necessitated by the legitimate demands of the probation process." *Id. Tamez* found that the lack of any restriction on the warrantless search rendered the term and condition of community supervision "too broad, too sweeping and infringe[d] on the probationer's rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 9, of the Texas Constitution." *Id.*

*Tamez* is distinguishable. Whereas the term and condition in *Tamez* failed to contain any restrictions, the term and condition of community supervision here was limited to searches "for illegal drugs or contraband." A condition of community supervision

> is invalid if it has all three of the following characteristics:
>
> (1) it has no relationship to the crime;
>
> (2) it relates to conduct that is not in itself criminal; and
>
> (3) it forbids or requires conduct that is not reasonably related to the future criminality of the defendant or does not serve the statutory ends of probation.

*Briseño*, 293 S.W.3d at 647–48 (citations omitted) (citing *Lacy v. State*, 875 S.W.2d 3, 5 (Tex. App.—Tyler 1994, pet. ref'd)). The term "'[r]easonably related' hinges on three factors: '(1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law

enforcement.'" *Id.* at 648 (quoting *Macias v. State*, 649 S.W.2d 150, 152 (Tex. App.—El Paso 1983, no pet.)).

Cochran had been placed on deferred adjudication community supervision for possession of illegal drugs, and another condition of Cochran's community supervision required him to refrain from possessing drugs. Those on community supervision are more likely to violate the law than those that are not. *Knights*, 534 U.S. at 119; *Townes v. State*, 293 S.W.3d 227, 231 (Tex. App.—San Antonio 2009, no pet.). They tend to be more motivated than the ordinary citizen to hide criminal behavior and incriminating evidence, since they know they are subject to supervision and can have their community supervision revoked. *Knights*, 534 U.S. at 120; *Townes*, 293 S.W.3d at 231. "The goals of community supervision require and justify the exercise of supervision to assure that these conditions and restrictions are in fact observed." *McArthur*, 1 S.W.3d at 332.

The condition requiring Cochran to submit to law enforcement searches, limited in scope to searches for illegal drugs or contraband, bore a direct relationship to the underlying crime and related to criminal acts. *See id*. The condition also served the statutory ends of promoting rehabilitation, because it sought to dissuade Cochran from possessing illegal drugs by "making appellant cognizant that unlawful possession can be discovered at any time." *Id.* This "ma[d]e it less likely that in the future, appellant would commit additional" drug-related offenses. *Id.* at 333; *see Briseño*, 293 S.W.3d at 649. The term and condition of Cochran's community supervision was "meant to assure that the probation serve[d] as a period of genuine rehabilitation and that the community [was] not harmed by the probationer's being at large.'" *Townes*, 293 S.W.3d at 231–32 (quoting *Griffin*, 483 U.S. at 875). Given that Cochran was on community supervision for a

10

drug-related offense, we find that he did not have an expectation of privacy that society would recognize as legitimate in areas of a residence that could conceal illegal drugs and contraband. Accordingly, we conclude that the condition did not infringe on Cochran's constitutional rights to privacy.

Because we find that the valid condition of Cochran's community supervision authorized the warrantless search of his "person, residence, or vehicle," we overrule this point of error. *See id.* at 232 (condition valid requiring defendant to consent to warrantless searches by community supervision officers "to ensure compliance with the terms of his probation"); *Briseño*, 293 S.W.3d at 648 (condition valid requiring defendant to "[c]onsent to search of [his] person, or residence, or of any vehicle in which [he is] operating at any time by [his] Supervision Officer without prior notice or search warrant, to determine if [he is] in compliance with the Conditions of Community Supervision"); *McArthur*, 1 S.W.3d at 330 (condition valid requiring defendant to "[p]ermit the supervision officer to search [his] residence, any vehicle [he has] access to, and any of [his] possessions for the presence of sexually explicit materials or materials prohibited by these terms and to seize said materials"); *see also Gardner v. State*, No. 01-12-00624-CR, 2013 WL 4676340, at *4 (Tex. App.—Houston [1st Dist.] Aug. 27, 2013, pet. ref'd) (mem. op., not designated for publication) (defendant "waived his right to invoke his constitutional protection against unreasonable search and seizure" when he "agreed to submit to search and seizure by any peace officer investigating any offense involving a firearm").[5]

---

[5]Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

*(2)     The Search of Cochran's Motel Room Was Authorized*

Cochran also argues that the terms and conditions of his community supervision did not authorize the search of his motel room because it was not his residence. Cochran points to the address on his driver's license and suggests that the motel was simply a place of temporary sojourn. We disagree.

The labeling of a place as a "residence generally requires some condition greater than mere lodging. The term implies a place of abode, albeit temporary, rather than a mere transient lodging." *Martinez v. Bynum*, 461 U.S. 321, 338 (1983) (quoting *Whitney v. State*, 472 S.W.2d 524, 525 (Tex. Crim. App. 1971) (citation omitted). "A person may have both a permanent legal residence and a temporary legal residence." *Smith v. State*, 630 S.W.2d 948, 949 (Tex. Crim. App. 1982).

The Texas Court of Criminal Appeals has explained:

> Residence is an elastic term. The meaning that must be given to it depends on the circumstances surrounding the person involved and largely depends on the present intention of the individual. Neither bodily presence alone nor intention alone will suffice to create the residence, but when the two coincide, at that moment the residence is fixed and determined.

*Whitney*, 472 S.W.2d at 525 (citation omitted).

The trial court's findings of fact determined that Cochran's motel room was a residence. Evidence at the suppression hearing established that Cochran had stayed at the motel for thirteen of the previous nineteen days and had already paid for the fourteenth night when he was arrested. Accordingly, at the time of his arrest, Cochran had bodily presence at the motel and the present intention to return. The contents of the motel room demonstrated that the motel was used as more than mere transient lodging; it was the hub of Cochran's drug trade and the place he laid his head

12

more nights than not in the month in question. From these facts, the trial court was free to conclude that the motel was Cochran's temporary residence. Therefore, the condition of Cochran's community supervision authorized the search of his motel room. This point of error is overruled.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     October 11, 2018
Date Decided:       October 31, 2018

Publish