

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00216-CR

PHILLIP THADDEAUS TAYLOR, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Harrison County, Texas
Trial Court No. 2015-0443

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Phillip Thaddeaus Taylor moved to suppress the results of his blood test because his consent was not voluntary.[1] After his motion was denied, Taylor entered a plea of guilty to driving while intoxicated (DWI) with a blood alcohol concentration greater than 0.15.[2] Under a plea bargain, Taylor was assessed 365 days' confinement in the county jail, which was suspended. He was placed on fifteen months' community supervision and fined $500.00.

On appeal, Taylor asserts that the trial court erred in denying his motion. Because we find that Taylor's consent was voluntary, we affirm the trial court's judgment.

## I. Standard of Review and Applicable Law

We review a trial court's ruling on a motion to suppress for abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Cochran v. State*, 563 S.W.3d 374, 378 (Tex. App.—Texarkana 2018, no pet.). We review mixed questions of law and fact that do not turn on credibility or demeanor de novo. *Brodnex*, 485 S.W.3d at 436; *Cochran*, 563 S.W.3d at 378. When the trial court makes explicit findings of fact, the evidence is viewed in the light most favorable to its ruling, and we determine whether the findings are supported by the evidence.

---

[1]In his brief, Taylor purports to raise three issues. Yet, rather than three separate issues, they are three lines of argument in support of his contention that his consent to the blood draw was not voluntary. In his first argument, Taylor asserts that the implied consent provisions of Section 724.011(a) of the Texas Transportation Code do not apply since he was not under arrest. *See* TEX. TRANS. CODE ANN. § 724.011(a). The State agrees that Taylor was not under arrest and that Section 724.011(a) does not apply. As a result, we will assume that the implied consent provisions of Section 724.011(a) do not apply.

[2]*See* TEX. PENAL CODE ANN. § 49.04(d) (Supp.).

*Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We affirm the trial court's "decision if it is correct on any theory of law that finds support in the record." *Cochran*, 563 S.W.3d at 378 (citing *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002)).

Drawing blood pursuant to an investigation is a search and seizure, subject to the constraints of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966). Subject to a few well-delineated exceptions, under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is considered per se unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). That said, voluntary consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Id.*; *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). Consent to search must be voluntary based on a consideration of the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996). "Under Texas law, the State must prove voluntary consent by clear and convincing evidence." *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). Consent "may be given orally or by action, or shown by circumstantial evidence." *Valtierra*, 310 S.W.3d at 448 (citations omitted). A voluntary decision must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances." *Valtierra*, 310 S.W.3d at 448 (citing *Robinette*, 519 U.S. at 40).

## II.     The Trial Court's Findings of Fact

At Taylor's request, the trial court entered findings of fact and conclusions of law on his

motion to suppress.[3]  The trial court found:

1.     "Taylor was involved in an automobile wreck in Harrison County, Texas[,] the 14th day of June 2015 . . . [and] struck a vacant automobile that was parked along the shoulder of Interstate 20 in the East bound lane near mile marker 616";

2.     "Trooper Kirby Jarrell arrived on the scene to investigate the crash . . . [and] found [Taylor] alone outside of his vehicle";

3.     "[Taylor] admitted to being the operator of his vehicle . . . [and] that he had consumed three to four beers";

4.     "Jarrell did not place [Taylor] in restraints at any time during the course of investigation";

5.     "[Taylor] did not appear in medical distress at any time";

6.     "Emergency medical services personnel arrived at the scene after a time, and met with [Taylor] . . . [and Taylor] elected to be transported to a hospital in Marshall for medical evaluation";

7.     "Taylor walked to the ambulance under his own power, and without restraints";

8.     "Jarrell remained with the vehicle driven by [Taylor] until a wrecker service arrived";

9.     "[Jarrell] then drove to the hospital to complete his investigation";

10.    "At the hospital, Jarrell again made contact with [Taylor] to continue his investigation";

---

[3]Although the trial court's findings of fact were untimely, we may consider them since they were entered and filed of record over two months before Taylor filed his brief.  *See Busch v. Hudson & Keyse, LLC*, 312 S.W.3d 294, 298 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (appellate court may consider trial court's untimely filed findings of fact and conclusions of law when appellant not prejudiced); *In re Gillespie*, 124 S.W.3d 699, 703 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (en banc) ("Thus, even if a trial court's plenary power has expired, the trial court is not prevented from entering properly requested findings and conclusions.").

11. "Jarrell instructed [Taylor] on the procedure for a Horizontal Gaze Nystagmus Test";

12. "Jarrell then performed the Horizontal Gaze Nystagmus Test, and, based upon his observations, requested [Taylor] consent to a voluntary blood draw";

13. "Before requesting the consent, . . . Jarrell provided [Taylor] a DIC 24 form, and read the form to [Taylor]";

14. "[Taylor] voluntarily consented to the blood draw";

15. "A nurse then took a blood sample [from Taylor]";

16. "Jarrell did not place defendant under arrest nor restrain him in any way";

17. "Jarrell did not force, threaten, or try to convince [Taylor] to provide a blood sample";

18. "Jarrell confirmed [Taylor]'s agreement to provide a blood sample and documented such consent";

19. "[Taylor] was not placed in custody, and was not ever placed in hand restraints at any time during this process";

20. "Jarrell left the emergency room without transporting [Taylor] to jail"; and

21. "Taylor was free to leave the emergency room pending medical approval."

The trial court also concluded that, under the totality of the circumstances, Taylor voluntarily consented to the blood draw.

Taylor supported his motion to suppress the evidence from the blood draw with an affidavit in which he alleged:

> I believed at the time, that had I refused to give a blood sample that Officer Jarrell would arrest me and my driver's license would be suspended. I agreed to the [sic] giving a blood sample because I felt like I could not decline to do so, or I would be immediately arrested.

5

Jarrell testified at the hearing, and his testimony was substantially confirmed by a recording of his interaction with Taylor at the scene of the accident and at the hospital.[4] At the scene of the accident, the recording showed Jarrell first stopping at the unoccupied automobile, which had sustained substantial damage to its rear bumper, left rear quarter panel, and left rear door. Jarrell proceeded forward to where Taylor's pickup truck was parked to the right of the shoulder. Then Jarrell approached Taylor, who was outside his vehicle. Taylor acknowledged that he had been driving his vehicle. Taylor explained to Jarrell that he thought he had dozed off and hit the other vehicle. Jarrell instructed Taylor to get his proof of insurance and to accompany him to the rear of the vehicle.

At the rear of the vehicle, in response to Jarrell's questions, Taylor disclosed that he had been in Longview with his friends and consumed three to four beers. Jarrell returned to his patrol car and requested that emergency medical services (EMS) be sent to check Taylor out, requested wrecker service for the vehicles, and requested that a check of Taylor's driver's license be made. After examining the damage done to Taylor's vehicle, Jarrell returned to where Taylor was standing and waited for EMS to arrive.

EMS arrived about sixteen minutes after Jarrell's initial contact with Taylor. Jarrell stood by Taylor's vehicle while EMS examined and interviewed Taylor. At the end of their examination, Taylor first refused to go with EMS. After being informed of Taylor's refusal, Jarrell responded, "[O]kay." Taylor then asked Jarrell if he was going home. Jarrell responded that he did not know

---

[4]The recording is both audio and visual at the accident site, but only audio at the hospital. The video portion of the recording originated from Jarrell's dash camera, and the audio apparently originated from Jarrell's body recorder.

and that it would depend on the result of his DWI investigation. When Taylor asked if he should go with EMS, Jarrell responded that it was up to Taylor. Taylor then elected to go with EMS and left with them. Jarrell remained at the scene until tow trucks removed the vehicles.

On the recording at the hospital, Jarrell told Taylor that he would check his eyes and that Taylor was to follow the tip of Jarrell's finger with his eyes only.[5] Jarrell then read form DIC-24 to Taylor.[6] At the conclusion, Jarrell requested a specimen of Taylor's blood, and Taylor responded, "[Y]es, sir."

Next, Taylor asked if Jarrell was placing him under arrest, and Jarrell responded, "[N]ot at the moment." Jarrell then explained that, since Taylor was injured, he could take care of it now or in the future. Jarrell continued to explain that he would take a blood specimen now and get the results, then turn it over to the district attorney, who would decide whether to issue a warrant for Taylor's arrest. Taylor then asked if Jarrell wanted to get a specimen, and Jarrell responded that he would get a nurse. After a few minutes, Jarrell told Taylor that he was giving him a consent form. A few seconds later, Taylor inquired as to when they would get the results, and Jarrell told him it would be a couple of weeks. A woman's voice then said that she would draw his blood.

Later, Jarrell informed Taylor that, when the hospital was through, he could go home. Jarrell returned Taylor's driver's license to him and gave him information on how to locate his vehicle.

---

[5]At the hearing, Jarrell testified that he performed a horizontal gaze nystagmus test on Taylor at the hospital before requesting consent to draw blood.

[6]Form DIC-24 contains the statutory warnings in Section 724.015 of the Texas Transportation Code. *See* TEX. TRANS. CODE ANN. § 724.015 (Supp.). The first statement of form DIC-24 is "You are under arrest."

7

**III.    Analysis**

On appeal, Taylor argues that his affidavit placed the voluntariness of his consent before the trial court and that the State did not bring forth any evidence establishing that his consent was voluntary.   He points to his conversation with Jarrell at the roadside and argues that Jarrell threatened to arrest him.   He also argues that Jarrell threatened to arrest him again at the hospital when Jarrell told him, "[W]e can take care of it now or we can take care of it at a later date."

We note that the State introduced the recordings of Taylor's encounter with Jarrell set forth above.   Those recordings substantially support the trial court's findings of fact.   When viewed in the light most favorable to the trial court's ruling, those recordings show that Jarrell did not threaten Taylor with arrest at the scene of the accident or at the hospital.   While at the accident scene, Jarrell informed Taylor that it was up to Taylor whether to go with EMS.   When Taylor asked if he could go home if he did not go with EMS, Jarrell responded that that would depend on the results of his DWI investigation.   This would suggest to a reasonable person that whether he would be arrested at that time was not yet known.   Taylor then voluntarily accompanied EMS to the hospital.

At the hospital, Jarrell did not threaten to place Taylor under arrest.   Although the initial statement of the DIC-24 form suggested he was under arrest, Taylor sought clarification from Jarrell.   Jarrell then explained that, since Taylor was injured, the determination would be made later by the district attorney after the results of the blood draw were known. After that clarification, Taylor again consented to the blood draw.

8

Although Taylor contends that he was influenced by the physical and psychological pressures of law enforcement, the evidence shows that Jarrell did not pressure Taylor either physically or psychologically. Rather, during the entirety of the encounter with Taylor, Jarrell was forthright and courteous and answered Taylor's questions in a straightforward manner.

Based on this record, we find that clear and convincing evidence supports the trial court's finding that, under the totality of the circumstances, Taylor's consent to the blood draw was voluntary. *See Robinette*, 519 U.S. at 40. As a result, we find that the trial court did not abuse its discretion in denying Taylor's motion to suppress the evidence. *See Crain*, 315 S.W.3d at 48. We therefore overrule Taylor's issues.

## III.    Conclusion

For the reasons stated, we affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:      May 14, 2019
Date Decided:        June 5, 2019

9