

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-19-00094-CR

_____

KORY ALLEN BATTIEST, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 28050

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

During the investigation of Kory Allen Battiest on allegations of aggravated sexual assault of a seven-year-old child, Battiest agreed to take a polygraph examination, during which he confessed to the offense. On appeal from his conviction, his sentence of seventy years' imprisonment, and a $10,000.00 fine,[1] Battiest argues that his confession was involuntary, due to his recent use of drugs and alcohol and sleep deprivation, and that the trial court thus erred in overruling his motion to suppress the confession.

After reviewing the transcript from the suppression hearing and the trial court's written findings, we find no abuse of discretion in the trial court overruling Battiest's suppression motion. However, because the trial court's judgment fails to reflect Battiest's plea and the jury's finding that the State's enhancement allegation was true, we modify the trial court's judgment to reflect these facts. As modified, the trial court's judgment is affirmed.

*(1)*     *The Trial Court Did Not Abuse Its Discretion in Overruling the Suppression Motion*

It is undisputed that Battiest volunteered to come to the Paris Police Department to take a polygraph examination administered by Bryan Luley, a Senior Special Agent for the United States Department of Justice, Office of the Inspector General, and that Luley engaged in a noncustodial interview.[2] It is also undisputed that Battiest was informed of his constitutional and statutory rights

---

[1]Battiest pled true to the State's enhancement allegation.

[2]Due to their inherent unreliability, "references to a polygraph test, or to its results, are inadmissible for all purposes." *Martinez v. State*, 272 S.W.3d 615, 626 (Tex. Crim. App. 2008).

and was given proper *Miranda*[3] and Article 38.22[4] warnings, both before and after he admitted sexual contact with the child and said he had "placed his tongue on her vagina on one occasion." Yet, Battiest argues that his confession to Luley and subsequent confession to Chris Bean, a detective with the Paris Police Department, were not freely and voluntarily given, because "he was under the influence of substantial illegal drugs and alcohol and was deprived of sleep." After the suppression hearing, the trial court concluded otherwise.

A trial court's ruling on a motion to suppress is reviewed on appeal for an abuse of discretion. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We give almost total deference to the trial court's determination of historical facts that turn on credibility and demeanor. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Cochran v. State*, 563 S.W.3d 374, 378 (Tex. App.—Texarkana 2018, no pet.). We review de novo all mixed questions of law and fact that do not turn on credibility or demeanor. *Brodnex*, 485 S.W.3d at 436; *Cochran*, 563 S.W.3d at 378. When the trial court makes explicit findings of fact, the evidence is viewed in the light most favorable to its ruling, and we determine whether the findings are supported by the evidence. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We affirm the trial court's "decision if it is correct on any theory of law that finds support in the record." *Cochran*, 563 S.W.3d at 378 (citing *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002)).

"When the voluntariness of a confession is challenged, the trial court must make an independent determination in the absence of the jury as to whether the statement was voluntarily

---

[3]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]*See* TEX. CODE CRIM. PROC. ANN. art. 38.22.

made." *Simpson v. State*, 67 S.W.3d 327, 332 (Tex. App.—Texarkana 2001, no pet.) (citing *Jackson v. Denno*, 378 U.S. 368, 380 (1964); *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 6). "At [such a] hearing, the State has the burden under the Fifth and Fourteenth Amendments of proving by a preponderance of the evidence that the confession was voluntary." *Id.* (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995)). Sleep deprivation or "[i]ntoxication, while relevant, does not render a confession involuntary per se." *Id.* (citing *Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim. App. 1996)); *see Douglas v. State*, 489 S.W.3d 613, 632 (Tex. App.—Texarkana 2016, no pet.). Instead, we ask whether these factors "rendered [the maker] incapable of making an independent, informed decision to confess." *Douglas*, 489 S.W.3d at 632 (quoting *Jones*, 944 S.W.2d at 651); *see Simpson*, 67 S.W.3d at 332. "We evaluate whether the statement was voluntary by examining the totality of the circumstances." *Douglas*, 489 S.W.3d at 632.

At the suppression hearing, Battiest testified that he remembered scheduling the interviews with Bean, agreeing to take a polygraph test, and presenting himself at the Paris Police Department on time for the interviews. He claimed, however, that he did not remember the interviews because he was habitually using methamphetamine, marihuana, "Thc dab," Seroquel, and Xanax. Battiest claimed he drank "[u]p to about 30" sixteen-ounce beers on the night before the interviews and had been awake for three days and three nights.

Luley testified that, although Battiest volunteered for the interview, Luley provided Battiest with a form informing him that (1) he had the right to remain silent, (2) anything he said could be used again him in court, (3) he had the right to speak to a lawyer for advice before questioning and

4

could have a lawyer present during questioning, (4) he had the right to a court-appointed lawyer if he could not afford one, and (5) he had the right to stop the questioning at any time. Luley testified, and the form showed, that Battiest initialed his acknowledgment of each right. Battiest also initialed the following statements:

> I have read this statement of my rights and it has been read to me. I understand what my rights are. I voluntarily waive my rights and I am willing to answer questions at this time. No promises have been made to me. No threat of coercion has been used against me.

Luley testified that Battiest signed the form in his presence. In addition to this form, Battiest also signed a voluntary polygraph examination form representing that he was in "good mental and physical condition and kn[ew] of no mental or physical problem which [could] impair [his] ability to be examined."

To document Battiest's medical suitability to take the polygraph examination, Luley administered a medical questionnaire.[5] In response, Battiest said that he consumed twelve beers the night before the interview and a "small bowl" of marihuana the morning of the interview. Battiest also reported that he was injured as a result of a recent fight he had had that morning, had only slept three hours, and had, at some point in the past, consulted a doctor about suicidal thoughts and bipolar, attention deficit, and depression disorders. After the medical questionnaire, Battiest believed he was unfit to take the polygraph examination because of the physical pain he was in as a result of the fight.

---

[5]The medical questionnaire dealt with the twenty-four hours immediately preceding the interview. Luley testified that he did not ask about drug use outside of the twenty-four-hour period and did not ask how Battiest had slept in the last three or four nights.

Yet, Battiest admitted to Luley that he had sexual contact with the child. Luley testified that Battiest responded to questions in an appropriate and timely manner and recalled the details of actions, as well as when and where the offense occurred. As a result of Battiest's admission, Bean conducted a separate, custodial recorded interview with Battiest. Both Bean's testimony and the recording showed that Battiest was again given warnings under Article 38.22 and *Miranda*, said he understood his Constitutional and statutory rights, and waived them before providing details of the sexual assault.

Luley and Bean, who had both discussed Battiest's drug history with him, clarified that Battiest did not indicate he had ingested anything other than marihuana or alcohol in the twenty-four-hour period before the interviews. Luley also testified that Battiest never said he had consumed methamphetamine, Xanax, or Seroquel. According to Luley, Battiest did not appear to be hung over. Bean testified that, based on his thirty-three years of experience in law enforcement, Battiest was not under the influence of alcohol or drugs at the time of the interviews. Bean also said that Battiest did not claim to be deprived of sleep and had no difficulty understanding or answering questions. Luley and Bean testified they had no indication that Battiest was under the influence of any drug or alcohol, operating on "diminished capacity," incapable of waiving his rights, or incapable of understanding the consequences of his waivers.

After the trial court reviewed Battiest's recorded interview with Bean, it found Battiest was not sleep deprived or under the influence of drugs or alcohol and was "very lucid." As a result, it concluded that Battiest "understood his right against self-incrimination but clearly waived that right." The trial court entered written findings of fact and conclusions of law supporting its

6

decision to overrule the suppression motion. In its written findings, the trial court noted that Battiest looked up at the camera, did not have slurred speech, was coherent, and was able to "recall the fact he kissed [the victim's] vagina, what clothes the victim was wearing, his body position when he did it as well as what he allegedly didn't do." The trial court found that Battiest "spoke at numerous times about drugs and his use of them," but never claimed to be "under [the] current influence of narcotics." It also wrote that Battiest's weeping before the interview and question to Bean regarding whether he was going to jail on that day indicated he understood the consequences of his confession.

We find that the recorded interview, along with Luley's and Bean's testimony, supported the trial court's conclusions that (1) Battiest was not intoxicated or sleep deprived such that he was incapable of making an independent, informed decision to confess, (2) Battiest "knowingly, intelligently, and voluntarily" waived his Constitutional and statutory rights, and (3) Battiest's confession was freely and voluntarily made. Because the trial court did not abuse its discretion in overruling Battiest's suppression motion, we overrule Battiest's point of error.

*(2)     We Modify the Trial Court's Judgment*

The record demonstrates, however, that the trial court's judgment must be modified. The judgment of conviction in this case states, in part, "1st Enhancement Paragraph: N/A" and "Findings on 1st Enhancement Paragraph: N/A." The record clearly reflects, however, that Battiest pled true to the State's habitual-offender enhancement allegation and that the jury was instructed to and did find this allegation true, thereby enhancing Battiest's punishment from a minimum range

7

of five years' imprisonment to a minimum range of fifteen years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 12.32(a), 12.42(c).

We have the authority to modify a judgment to make it speak the truth, even if a party does not raise the problem. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.). "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in trial court; we may act sua sponte and may have a duty to do so." *Rhoten*, 299 S.W.3d at 356 (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd)); *see French*, 830 S.W.2d at 609.

We modify the trial court's judgment to reflect that Battiest pled true to the State's enhancement allegation and that the jury found the enhancement allegation true. As modified, the trial court's judgment is affirmed.


Josh R. Morriss, III
Chief Justice

Date Submitted:     September 19, 2019
Date Decided:       October 10, 2019

Do Not Publish

8