

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00007-CR

LUIS ALBERTO ADAME, JR., APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 16-06-8772; Honorable Pat Phelan, Presiding

December 11, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Luis Alberto Adame, Jr., appeals from the trial court's judgment revoking his community supervision and sentencing him to ten years of imprisonment for the offense of sexual assault of a child.[1] Appellant challenges the court's judgment through two issues. We affirm as modified.

---

[1] TEX. PENAL CODE ANN. § 22.011(a)(2)(A) (West 2019). As indicted, the offense was a second degree felony. *Id.* at § 22.011(f).

BACKGROUND

In early 2017, Appellant pleaded guilty to sexual assault of a child. His ten-year sentence was suspended in favor of his placement on community supervision for a period of ten years. His community supervision was subject to certain terms and conditions. Almost six months after Appellant's placement on community supervision, the State filed a motion to revoke. Following a hearing in which the trial court found the alleged violations to be true, the trial court ordered Appellant's community supervision to continue with additional terms.

Several months later, the State filed another motion to revoke, alleging Appellant violated eight of the thirty-four conditions of his community supervision. Those alleged violations included Appellant's failure to report as required, failure to work at suitable employment, failure to pay required fines and fees, failure to pay the required monthly community supervision fee, failure to attend psychological counseling sessions, failure to perform required community service, failure to attend probation performance reviews, and failure to avoid contact with a minor child.

The trial court held a hearing on the State's motion during which Appellant pleaded "not true" to the State's allegations. Two witnesses testified. One witness was Appellant's community supervision officer and the other was an investigator with the Texas Department of Family and Protective Services.

Appellant's community supervision officer testified to the terms and conditions of Appellant's community supervision, that he discussed those terms and conditions with Appellant, and that Appellant understood them. The officer then told the court which conditions Appellant violated. First, Appellant failed to report as required for the months

2

of May through December 2018. The officer testified his last contact with Appellant was a February 2018 "face-to-face" "field visit" in which the officer went to see Appellant rather than Appellant coming to see him. Second, while Appellant did submit a job search form in November 2017, he did not obtain employment and "failed to provide proof that he's [continuing to seek] employment." Third, the officer testified Appellant was required to attend sex offender counseling once a week. The sex offender counselor told the officer Appellant missed several sessions and also failed to attend a scheduled polygraph exam in February 2018. Appellant was "discharged unsuccessfully" from the program in late February 2018. Fourth, the officer told the court Appellant was ordered to complete community service hours and because Appellant was not employed, he was required to complete eight hours per week. However, Appellant had completed only a total of 6.5 hours for the entire period of his community supervision. Furthermore, Appellant failed to appear for a required performance review hearing. The community supervision officer also told the court that the terms and conditions of Appellant's community supervision prohibited his contact with minor children without permission of the officer or the court. In mid-February, the officer received a telephone call and follow-up email from a CPS investigator informing him that a week earlier, he conducted a home visit regarding minor children. A male identified as Appellant answered the door of the apartment and it was confirmed he was in the presence of minor children. The officer recommended to the court that Appellant's supervision be revoked because he is "not a good candidate to complete probation just by his actions throughout his term of supervision and so I don't think he will comply with conditions."

The investigator with the Department of Family and Protective Services testified he received an intake report concerning domestic violence in the home of an infant and

a one-year-old.  The report indicated concerns of domestic violence, loud arguing, drug use, and neglect.  When the investigator visited the home in early February 2018, a male answered the door and told the investigator the woman he was looking for was not there.  On request, that person identified himself to the investigator as Appellant and told him he was babysitting the children.  The investigator asked to see the children and Appellant allowed him to do so.  The investigator "made a brief assessment, assured their safety" and obtained further identifying information from Appellant and contact information for the mother.  The investigator left the apartment and went to his car to determine who Appellant was and to attempt to locate the mother.  Within thirty minutes, a maternal aunt arrived.  She went to the apartment and came downstairs with one of the children.  The investigator asked who she was, and she identified herself.  Shortly thereafter, Appellant came downstairs with the other child.

Appellant told the investigator he was not the father of the children, but the maternal aunt told the investigator he was.  The aunt left with the children, so the investigator went back to the apartment and asked Appellant again whether he was the father of the children.  Again, he said no and when confronted with the fact the maternal aunt said he was, he just said it had not "been proven" and that he had "not taken a paternity test" so he did not know for certain if he was.  The investigator left and within two or three hours, he discovered Appellant's charges of sexual abuse to a minor child.  The investigator later spoke with the mother and she confirmed Appellant was the father of the children.  When asked, she told the investigator she was not aware of the condition prohibiting Appellant's contact with minor children.  The mother also told the investigator Appellant was not living in the apartment with her and her children.  However, other people at the apartment complex told the investigator Appellant was living there.

4

Appellant did not testify but did comment to the court that he "tried my hardest to complete my probation." He also said his community supervision officer told him to stop taking his anxiety medication and that he would "just get too nervous, I guess, and I didn't report. I'm sorry."

At the conclusion of the hearing, the trial court found each of the State's allegations to be true and revoked Appellant's community supervision. The court sentenced Appellant to serve ten years of imprisonment.

### ANALYSIS

### STANDARD OF REVIEW AND APPLICABLE LAW

The only question before this court when reviewing an order revoking community supervision is whether the trial court abused its discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App.1984) (citation omitted). In a revocation proceeding, the State is required to prove by a preponderance of the evidence that the probationer violated a condition of community supervision as alleged in the motion to revoke. *Cardona*, 665 S.W.2d at 493 (citation omitted). Proof of a single violation is sufficient. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012). If the State fails to satisfy its burden of proof, the trial court abuses its discretion in revoking community supervision. *Cardona*, 665 S.W.2d at 493-94. (citation omitted). In determining the sufficiency of the evidence to sustain a revocation, we view the evidence in the light most favorable to the trial court's ruling. *Id.* at 493. The trial court is the sole trier of fact and determines the credibility of witnesses and the weight to be give their testimony in revocation proceedings. *Moore v. State*, 11 S.W.3d 495, 498 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (citation omitted).

**APPLICATION**

**ISSUE ONE—SUFFICIENCY OF THE EVIDENCE**

In his first issue, Appellant argues the evidence was insufficient to prove he violated several conditions of his community supervision order. The State responds that it presented sufficient evidence showing Appellant violated each condition and because the law requires sufficient evidence of violation of only one condition, we must overrule the issue. We agree.

Appellant first argues the State failed to prove he did not properly report. Appellant concedes his community supervision officer testified Appellant did not report to him but argues there was no evidence Appellant did not report to another officer. The report and file were not admitted into evidence. According to Appellant, such evidence has been found in other cases sufficient to prove an appellant's failure to report as required. However, Appellant asserts, because no such evidence was offered here, the State's proof falls short. We do not agree with Appellant's arguments, in significant part because, in his comments to the court, Appellant admitted his failure to report. While he said it was because he was "too nervous" and that he was sorry, these are not valid explanations for his failure to report. The trial court was free to interpret this as an admission supporting violation of this condition.

Appellant also argues the order did not expressly include in its conditions that Appellant make a certain number of job contacts. It said only that Appellant "shall work faithfully at suitable employment as far as possible." The officer acknowledged Appellant submitted a job form, made several job contacts, had few skills for employment other than manual labor, and that finding a job "would be difficult." The officer also said that he faulted Appellant "for not seeking employment" rather than for not obtaining employment.

6

The record also shows that when Appellant did find potential employment, his community supervision officer told him he could not take the job because it was not local and would take him out of the sex offender counseling program. According to Appellant, courts have been reluctant to revoke community supervision for violation of this condition, particularly when some efforts toward employment have been made. However, the trial court here had before it sufficient facts from which it could have found, by a preponderance of the evidence, that Appellant violated this condition. *See Howard v. State,* No. 09-09-00386-CR, 2010 Tex. App. LEXIS 5758, at *6-7 (Tex. App.—Beaumont July 21, 2010, pet. ref'd) (mem. op., not designated for publication).

Next, Appellant argues the law requires the State to show Appellant had the ability to pay the fees and costs he was alleged to have left unpaid. This is so because, Appellant asserts, revocation of community supervision for failure to pay when a defendant is unable to pay denies due process of law. Under article 42A.751(i), when it is alleged only that the defendant violated the conditions of community supervision by failing to pay community supervision fees or court costs or by failing to pay the cost of legal services, the State must prove, by a preponderance of the evidence, that Appellant had the ability to pay but willingly did not pay the required costs and fees. TEX. CODE CRIM. PROC. ANN. art. 42A.751(i).

The statute comes into play in a revocation hearing at which it is alleged *only* that the defendant violated the conditions of community supervision by failing to pay community supervision fees or court costs or by failing to pay the cost of legal services. Here, several other allegations were at issue in the revocation hearing. The "clear language of the statute provides that the State only needs to prove the defendant's ability to pay when the failure to pay is the only allegation." *Archer v. State*, No. 13-18-00059-

CR, 2019 Tex. App. LEXIS 4216, at *10 (Tex. App.—Corpus Christi May 23, 2019) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. art. 42A.751(i)). Thus, when the State alleges more than one allegation at the revocation hearing, as is the case here, "the State is not required to prove the defendant had the ability to pay or that his failure to do so was willful." *Id.* (citing *Gipson v. State*, 428 S.W.3d 107, 113 (Tex. Crim. App. 2014) (Johnson, J., concurring). S*ee also Farr v. State*, No. 13-17-00297-CR, 2018 Tex. App. LEXIS 6714, at *9-10 (Tex. App.—Corpus Christi Aug. 23, 2018, no pet.) (mem. op., not designated for publication)). Therefore, the trial court had before it sufficient evidence to support a finding Appellant violated this condition.[2]

Appellant further argues that in its motion, the State alleged he violated condition number 15 that required Appellant to attend psychological counseling sessions. However, the community supervision officer testified that Appellant failed to attend sessions of the sex offender counseling program as described in condition B, not condition 15. Because, Appellant argues, evidence was given to support a violation of condition B rather than condition 15 and because the State failed to allege Appellant violated condition B, the evidence was insufficient to support revocation under condition 15. The testimony indicates that while there are two conditions pertaining to counseling, one for psychological counseling and one for the sex offender counseling program, the two were, in Appellant's case, related or perhaps the same requirement. The officer speaks to both individual counseling and group sessions, noting both of the conditions.

---

[2] Appellant also argues that while his failure to pay the imposed fine is not alone subject to article 42A.751(i), the court included the repayment of the fine with the other fees and costs. Therefore, he asserts, his community supervision should not have been revoked on his failure to make payments toward repayment of the imposed fine. Because we have found the State was not required to prove Appellant had the ability to pay fees and costs under the statute or that his failure to so pay was willful, we find the State was not required to prove either with regard to the assessed fine.

Given this, the trial court could have been confused. In any event, this finding does not warrant a reversal of the decision to revoke in light of the other established violations.

Condition 19 of Appellant's community supervision order required him to complete community service hours. At the time the motion was filed, the State alleged Appellant was thirty-one hours delinquent. Appellant was required to perform 240 hours of service and the officer testified he had completed only 6.5 hours by the time of the revocation hearing. Appellant does not dispute this evidence; rather, he argues the State failed to meet its burden of proof as to this allegation because the officer relied only on his own records, did not refer to the departmental records as a whole, and did not state how he received verification of completion of hours. We disagree with Appellant's assessment of the evidence and find the trial court could have determined there was sufficient proof to support a finding that Appellant violated this condition.

Based on the above and foregoing, the trial court did not abuse its discretion in determining Appellant violated at least one of the terms and conditions of his community supervision. Accordingly, we overrule Appellant's first issue.

### ISSUE TWO—THE EFFECT OF EXHIBIT A(F) ON APPELLANT'S FAMILIAL RIGHTS

In his second issue, Appellant argues the restriction against contact with minor children contained in Exhibit A(f) of his community supervision order unconstitutionally restricted his familial rights and was not reasonably related to his underlying crime.[3]

---

[3] In his appellate brief, Appellant refers to the restriction contained in Exhibit A(f) of his community supervision order as "condition eight." It is not, however, condition 8 of Appellant's community supervision order. It is the eighth allegation in the State's motion to revoke. We will refer to the condition of which Appellant complains as that condition set forth in Exhibit A(f).

Appellant pleaded guilty to sexual assault of a child.  The victim was fourteen years old and Appellant had just turned nineteen.  Appellant acknowledges that because the victim was considered a child under the law, the condition restricting his contact with minor children is reasonably related to his underlying crime.  However, he contends, if the order did extend to his own biological children, something Appellant disputes because the order did not explicitly say so, the condition was not reasonably related to the underlying crime because his crime was not one against very minor children or incestuous in nature. Rather, it was of the "statutory rape" variety and thus, Appellant posed no danger to his own minor children. The condition, Appellant asserts, thus "eviscerated his constitutional familial rights."

The State argues Appellant has mischaracterized Exhibit A(f).  The provision provides in relevant part as follows:

> Do not initiate, maintain, or establish direct or indirect contact with any minor child, or attempt to do so, nor reside in the same residence with minor children without prior permission of the court or supervision officer.

This, the State says, does not eviscerate Appellant's constitutional rights but instead, imposes only a safety requirement, i.e., that Appellant request permission prior to seeing his children.  We agree.

Texas trial courts are afforded "broad discretion" in devising terms of community supervision. *Cochran v. State*, 563 S.W.3d 374, 378-79 (Tex. App.—Texarkana 2018, no pet.) (citing *Butler v. State,* 189 S.W.3d 299, 303 (Tex. Crim. App. 2006); *Briseno v. State*, 293 S.W.3d 644, 647 (Tex. App.—San Antonio 2009, no pet.)). Trial judges "may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."  *Id.* (citing TEX. CODE

CRIM. PROC. ANN. art. 42A.301(a) (West 2018)). The condition contained in Exhibit A(f) was a permissible condition under the facts of this case. *See Ex parte Alakayi*, 102 S.W.3d 426, 435-36 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (discussing restrictions imposed in community supervision order limiting contact with minors and creating a child safety zone).

Appellant admits that under Exhibit A(f), he could have asked the trial court for permission to see his biological children and he readily admits he did not do so.  Instead, once his conduct was being questioned, he simply says this shows, when considered alongside the fact that Appellant did not attempt to hide his contact with his children from the officer, that he did not understand that the order extended to contact with his own minor children.  But ignorance is not an excuse.  Furthermore, the record shows the community supervision officer testified he discussed with Appellant that this condition "includes all children, biological and nonbiological."  In addition, the officer answered affirmatively when asked whether he was "convinced that [Appellant] clearly understood that included his own children."

Thus, we cannot agree that Appellant's asserted misunderstanding that the condition did not apply to his own children alters the character of the condition such that it violated his constitutional rights or placed an impermissible restriction on him.  This is true even though Appellant's crime was "not against very minor children or incestuous in nature" because limits like these may be placed on defendants on community supervision for many crimes, regardless of the victim's age.  *Ex parte Alakayi,* 102 S.W.3d at 435. (citations omitted); *Briseno,* 293 S.W.3d at 650.

Because the restriction set forth in Exhibit A(f) of Appellant's supervision order did not unconstitutionally restrict Appellant's familial rights and was reasonably related to his underlying crime, we resolve Appellant's second issue against him.

### REFORMATION OF JUDGMENT

During our review of Appellant's issues, this court noted an error in the *Judgment Revoking Community Supervision.* The summary portion of the judgment under the heading "Plea to Motion to Revoke" reflects a plea of "True." However, Appellant contested the State's allegations, pleading "not true" at the hearing. Furthermore, on page two, paragraph five, of the *Judgment Revoking Community Supervision* the court finds Appellant failed to attend psychological counseling sessions. As we have noted above, the State's evidence failed to establish this violation.

This court has the power to modify the judgment of the court below to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State,* 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The power to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* at 529-30. Thus, we modify the trial court's *Judgment Revoking Community Supervision* to reflect a plea of "Not true" in the summary portion of the judgment and to delete the fifth paragraph of the trial court's findings concerning violations of the conditions of community supervision.

12

**CONCLUSION**

As modified, we affirm the judgment of the trial court.

Patrick A. Pirtle
Justice

Do not publish.